# The Proprietors of the Mill Dam Foundery *versus* William Hovey.

To an "indenture" between a corporation and an individual, the parties "set their hands," and against each signature was a small bit of paper, attached by a wafer, without any impression on either indicative of a common seal of a corporation. It was *held*, that the instrument was the *deed*, as well of the corporation as of the individual.

The plaintiffs were the owners of works for the manufacture of iron, which were carried on by a water power, held by them under a lease ; and the lessors were bound to keep the dams in repair. By an indenture made in April, 1833, between the plaintiffs and the defendant, the defendant covenants to manufacture for the plaintiffs ten thousand dozen of plane-irons, by the 1st of July, 1834, and to keep in order all the tools used in the business, accidental breakage of some of them excepted ; and in consideration thereof the plaintiffs covenant to furnish all the iron and steel and other materials, as soon and as often as shall be reasonably required by the defendant to enable him to carry on the manufacture to the best possible advantage, and they agree " to give him (with the exception of the power conveyed to the boiler-house as now used) the exclusive use or an equivalent thereto, of the south water-wheel, drums, gears, belts, &c. belonging thereto, during regular working hours, whilst he is employed in making said plane-irons, they to keep the same in good repair, and to furnish him and to give him the control of all the tools, machinery, room and furnaces now in use or which may be added to the plane-iron establishment ; and they agree to make good all breakages (except of shear knives, tongs, and other small articles) that may happen to said tools and machinery, without delay ; and to advance to the defendant such sums of money as shall enable him to settle with all such of his hands as conform to the rules of the plaintiffs, on such terms as they settle with their own hands ;" and it is stipulated, that the defendant shall receive a certain sum for every dozen of plane-irons so manufactured by him ; and that the plaintiffs shall reserve, at all times, a drawback for such sums as they shall have advanced in paying his workmen, &c. until all such advances shall have been reimbursed. On this contract was indorsed, in July, 1833, an agreement not under seal, by which, for a certain sum, the defendant agrees to keep all the machinery and tools in good order, excepting any accident to the fly wheel of the rolling mill. On the 11th of October, 1833, a further agreement not under seal was indorsed, by which, in consideration and full satisfaction of previous breaches of the contract on the part of the plaintiffs, they make

Mill Dam
Foundery
*v.*
Hovey.

the defendant certain allowances and for his benefit extend the term of the contract four months from the 1st of July, 1834, "all other parts to remain the same." On the 14th of October, 1833, a breach was made in one of the mill dams by a very high tide, and the power of the south water-wheel was thereby reduced from a constant power to a tide power. At that time the defendant had on hand a large quantity of the plaintiffs' materials, in different stages of manufacture. The dam was repaired with due diligence, and the water power was restored on the 7th of March, 1834. At the time of the breach the plaintiffs had an unfinished steam-engine, which was completed and put in operation at their works, on the 27th of December, 1833, and was equivalent in power to the south water-wheel. It was *held* : —

That for a breach of the contract taking place after the modifications of the deed by the writings not under seal, assumpsit was a proper form of action : —

That the covenant to give the defendant the use of the south water-wheel or an equivalent, was a stipulation for the use of mill power, and not a demise to the defendant : —

That the furnishing of mill power was a condition precedent to the performance of the defendant, because without it no essential part of the work could be done : —

That the plaintiffs had the election to furnish either the south water-wheel, or an equivalent power, not only at the commencement, but afterwards during the whole period contemplated for the performance of the contract, and that they might change from one to the other, from time to time, it being done without occasioning delay or unnecessary inconvenience to the defendant : —

That as they had such an election, so they were bound to furnish one or the other during the whole period, subject to such occasional and casual interruptions as must necessarily attend the use of mill power : —

That if the breaking of the dam was not a substantial suspension and destruction, for the time being, of the water power, for manufacturing purposes, but only a temporary diminution, subjecting the defendant to some loss and inconvenience, then it was not a breach of a condition precedent which would excuse the defendant from performance, although he might have a remedy by an action for damages : —

That if the water power was destroyed for the time being, the defendant had no right to treat it as a breach of a condition precedent and absolve himself from further performance, provided the dam could be restored, or an equivalent power be furnished from a steam-engine, within a reasonable time : —

That if the water power failed and could not be restored within a reasonable time, and an equivalent steam power could be furnished within a reasonable time and at a reasonable cost and expense, the plaintiffs were bound to furnish such steam power : —

That in such case, if such steam power was furnished within a reasonable time, the plaintiffs complied with the condition precedent ; but otherwise there was a breach of the condition : —

That a breach of this condition precedent could only excuse the defendant from performing such part of the contract requiring the use of mill power, as remained to be performed when the breach of condition happened : —

That a mere temporary and inconsiderable suspension of the mill power, not manifesting any deliberate purpose of the plaintiffs to withdraw or withhold the power, would not amount to the neglect or refusal to furnish power, which would constitute a breach of the condition, but to have that effect it must be such a substantial refusal or neglect as would put it out of the power of the defendant to proceed in the performance of his contract : —

That if the defendant had a legal claim for damages arising from the loss of power

Mill Dam
Foundery
*v.*
Hovey

still he could not excuse himself from further performance on the ground of the plaintiffs' refusal to adjust and pay such damages : —

That although an interruption of the mill power might be construed to be the breach of a condition precedent, which would authorize the defendant to break off from the performance of his contract, yet if he continued in the performance until the power was reëstablished, this would amount to a waiver, and he would no longer be excused from further performance ; although, if he had suffered loss by the delay in furnishing the power, he would have a remedy by an action for damages : —

That the furnishing stock and materials to some extent, and even to the whole amount, if that could be reasonably required, was a condition precedent to any obligation on the defendant to perform, because he was to work on the plaintiffs' materials : —

But that if the plaintiffs had furnished a large quantity of materials, which the defendant had accepted and commenced working upon, he was bound to go on and finish the work on those materials ; and a subsequent neglect or refusal, after a reasonable requisition, to furnish further materials, would not excuse him from performance so far as to finish what he had begun, though it would be a breach of contract for which he would have his remedy by action, and it would excuse his non-performance so far as occasioned by the want of the rest of the materials : —

That a mere delay to furnish further materials, although it might prevent the defendant, in some particulars, from working to the best possible advantage and subject him to some slight loss, which would be a ground for recovering damages, would not be a breach of condition, unless it were continued, after a reasonable requisition, for such a length of time as to warrant the jury in inferring that it was not the intention of the plaintiffs to furnish them : — and

That the stipulation that the plaintiffs should advance money to pay the defendant's workmen, was not a condition precedent.

An unliquidated claim for damages against a manufacturing corporation, is a *debt*, within the meaning of *St.* 1829, *c.* 53, making individual members liable for the " debts " of the corporation.

In an action against a manufacturing corporation to recover a debt, it appeared that the annual notice published by the corporation next before the debt was contracted, did not certify the amount both of their debts and of their capital stock, as required by *St.* 1829, *c.* 53, but only of their debts. *Held*, that one who was a member of the corporation when the debt was contracted, but had ceased to be such when the action was tried, was individually liable for the debt, and consequently was not a competent witness for the corporation.

But in a cross action he would be competent, for no judgment could be recovered against the corporation except for costs, and that would be a debt contracted after he had ceased to be a member ; and his interest that the corporation should recover a judgment to be set off against a judgment in favor of the other party, is too remote and contingent.

THIS was an action of assumpsit.

At a trial, at November term 1835, before *Wilde* J., the plaintiffs offered in evidence the three following writings, set forth in the declaration : —

1. " This indenture of two parts, made this          day of April, A. D. eighteen hundred and thirty-three, between the Proprietors of the Mill Dam Foundery, on the one part,

and William Hovey, on the other part, witnesseth, that William Hovey, in consideration hereinafter mentioned, binds and obligates himself to the Proprietors of the Mill Dam Foundery, to manufacture of the iron, steel, &c. now on hand, and such other, suitable for the purpose, as may be made or procured, (according to the process now in use,) five thousand dozen single, and five thousand dozen double plane-irons, both to be of assorted sizes, as the market requires, and as many soft moulding irons as he can conveniently do without interfering with the other plane-iron business ; memorandum of sizes of irons to be hereunto affixed.    The whole to be manufactured in a good and workmanlike manner, equal to samples to be furnished by the parties — to be packed, labelled, and fit for market, in one year from the first of July next.    Said Hovey also agrees to keep in order all the tools used in said business during said time, all casualties and accidental breakages except-ed ; it being understood that the breaking of shears, knives, tongs, and other small articles, are not intended to be excepted.

" In consideration of the above, the Proprietors of the Mill Dam Foundery bind and obligate themselves to the said Hovey, to furnish all the iron, steel and other materials used in and about said manufacture.    The whole to be furnished as soon and as often as shall be reasonably required by said Hovey to enable him to carry on said manufacture to the best possible advantage.    The said Proprietors also agree to furnish stock and materials for all such soft moulding irons as he shall be able to manufacture during said time, he furnishing said Proprietors with a memorandum of such stock as he may require for said irons.

" The said Proprietors also agree to give the said Hovey, with the exception of the power conveyed to the boiler-house as now used, the exclusive use, or an equivalent thereto, of the south water-wheel, drums, gears, belts, &c. belonging thereto, during regular working hours while he is employed in making said plane and moulding irons, they to keep the same in good repair, and to furnish the said Hovey, and to give him the control of all the tools, machinery, room and furnaces now in use, or which may be added to the plane-iron establishment

" The said Proprietors also agree to make good all acciden

tal breakages, except shears, knives, tongs and other small articles, already spoken of, that may happen to said tool and machinery, without delay.

" Said proprietors further agree to advance to said Hovey such sums of money as shall enable him to settle with all such of his hands as conform to the rules and regulations of the proprietors aforesaid, on such terms as they settle with their own hands.

" Said Hovey is to receive fifty-four cents for each and every dozen of single, and one dollar and thirty-two cents for each and every dozen of double plane-irons so manufactured by him, when ready 'for delivery ; and twenty-four cents for each and every dozen of soft moulding irons, assorted from one fourth of an inch to two and one eighth of an inch.

" The proprietors shall reserve at all times a drawback for such sums as they shall have advanced in paying his workmen, &c. until all such advances shall have been reimbursed.

" In witness whereof we have hereunto set our hands.

William Hovey (and seal).

Robert Ralston, Jr., *Treasurer for the Proprietors of the Mill Dam Foundery* (and seal).

Witness to signatures,

    Ambrose Farrell,

    D. H. Dickinson."

The seals above mentioned consisted each of a wafer and a small bit of paper stamped with a common desk seal of a merchant. On the same paper was indorsed this memorandum, without date or seal, but in fact made in July, 1833 : —

2. " In consideration of two hundred and fifty dollars, to be paid at the expiration of this contract by the Proprietors of the Mill Dam Foundery to William Hovey, the said Hovey agrees, at his own expense, to keep all the machinery and tools of every kind in good order, to hang all the grindstones which may be necessary in the business, to repair all breakages of every description or kind (excepting any accident to fly-wheel of rolling mill) in a good and workmanlike manner, to replace rolls, shears, stamps, &c., to find castings and all other materials for repairs at his own expense ; it being understood that he will keep all the tools, instruments, &c. in full and ample repair,

and return them to the said proprietors in equally good order as they are when he receives them, free of any further charge. Should the said proprietors wish to have some cut irons in lieu of any part of the irons in the above contract, said Hovey agrees to furnish them at the same price as other single irons. It is further understood, that the said Hovey shall be answerable to said proprietors for the board and lodging of such of his men as live on their premises.

> William Hovey.

> Robert Ralston, Jr., *Treasurer*
> *for the Proprietors of the Mill Dam Foundery.*

Witness to signatures,

  Amb. Farrell,

  D. H. Dickinson."

On the same paper was a further indorsement as follows : —

3. " It is understood and agreed to by the parties to the within agreement, that in consideration of certain obligations in said contract which were not performed on the part of the Proprietors of the Mill Dam Foundery, the said proprietors agree to allow to the within named William Hovey fifty dollars on account, as also to relinquish a claim on him for a certain lead-lap, and also agree to receive, when finished, all the moulding irons which have been cut through mistake as left handed irons instead of right, and pay for them as specified in the within contract. The said proprietors also agree to extend the term of the within contract, for the benefit of said Hovey, four months from the first of July, 1834. All other parts to remain the same, the said Hovey having no further claim on said proprietors for non-fulfilment of contract.

> William Hovey.

> Thos. J. Eckley, *Treas. M. D. F.*

October 11, 1833."

The defendant objected to the admission of the first instrument, because it appeared to be under seal. The plaintiffs urged that it was not under seal ; and if it was so originally, that it had been altered by an agreement in writing not under seal ; and that assumpsit was the proper form of action.

The judge ruled, for the purposes of the trial, that the action was rightly brought, and admitted the evidence, reserving the point.

The water power at the plaintiffs' works was owned by the Boston Water Power Company, and was created by a main dam across an arm of the sea, and a cross dam running from the main dam to the land, whereby two basins were formed, one called the full basin, the other the receiving basin. The water flowed through gates, at high tide, into the full basin; thence it was conducted, through sluices in the cross dam, to the water-wheels and into the receiving basin; and at low tide it flowed from the receiving basin, through gates, into the sea.

Samuel Nicholson, a witness on the part of the plaintiffs, testified that he was the agent of the Boston Water Power Company, from whom the plaintiffs had a lease, derivatively, of their water powers; that the mill dam of this company was broken down on the 14th of October, 1833, by the force and pressure of the water from an extraordinarily high tide in the full basin, which carried away a part of the dam and gates, and thereby reduced the water power, which before that accident was a perpetual power, to a tide power; that the dam was repaired, and the full power restored, on the 18th of March, 1834; that in the intermediate time the mills of the plaintiffs were able to work only about three or four hours each tide; and that the plaintiffs had nothing to do with keeping the dam and gates in repair, which were under the care of the Boston Water Power Company.

Ambrose Farrell testified, that he was the clerk of the plaintiffs at their works; that the defendant used the south water-wheel; and that the north water-wheel carried the machinery of the foundery.

Thomas J. Eckley testified, that he became the agent and treasurer of the Proprietors of the Mill Dam Foundery in the fall of 1833, and was still the treasurer; that after the breach of the dam, he requested the defendant to go on with his contract; that the defendant declined going on, unless the witness would settle with and pay him for the loss which he alleged he had sustained by the interruption occasioned by the diminution of water power; that the witness assured him he should certainly be compensated when the witness should have become better acquainted with the plane-iron business; that the plaintiffs erected a steam-engine shortly after the breaking of the dam,

for their own use, and at the desire of the defendant a third boiler was added to the engine, with the necessary gearing to connect with the plane-iron machinery ; and that the witness offered the defendant power from the steam-engine, which the defendant said would be equivalent to the south water-wheel.

On this evidence the plaintiffs contended, that they were not bound to warrant the continuance of the power of the south water-wheel to the same extent as it was when the contract was entered into ; that the diminution of the power was by an accident which they could not have prevented, and which was as injurious to them as it was to the defendant; and that all they were bound to do was to give the defendant the use of the south water-wheel.

They further contended, that if they were bound to warrant the continuance of power, as alleged by the defendant, they had offered him an equivalent from the power of the steam-engine ; and that his refusal to go on with the contract unless the plaintiffs would pay him for the damage he had sustained by the interruption, was unlawful.

Under the money counts, the plaintiffs sought to recover the sum of $250, which had been received by the defendant "as an advance on a contract," &c. as appeared by a mortgage of personal property given by the defendant to secure the repayment, on or before the 1st of July, 1834, of this sum or any other sum for which he might become indebted to them. The defendant objected that this sum was an advance under the contract of April, 1833, and could not be recovered otherwise than in an action upon that contract. The judge ruled, that it could not be recovered under the money counts, nor under the special count, the plaintiffs not having set out any breach for the non-payment.

With the consent of the parties, the judge ordered a nonsuit, subject to the opinion of the full Court. If the Court should be of opinion, that the action was rightly brought, and that the defendant had been guilty of a breach of the contract in not proceeding after the breaking of the dam, or that the sum of $250 could be recovered under the money counts, a new trial was to be granted ; otherwise, the nonsuit was to stand.

*C. P. Curtis,* for the plaintiffs. The action is in proper form. The original instrument declared on was not under seal. The words of *in testimonium* are, " we have hereunto set our hands "; and the witnesses certify only to the *signatures. Clement* v. *Gunhouse,* 5 Esp. R. 83 ; Abbott on Shipping, (4th Amer. ed.) 434, note ; *Bradford . v. Randall,* 5 Pick. 496 ; *Austin's Administratrix* v. *Whitlock's Executors,* 1 Munf. 487.

The paper affixed was not the seal of the corporation, and the Court will not hold that in the same instrument one party contracted by deed and the other by simple contract.

But admitting the original contract to be by deed, it has been essentially varied, in several particulars, by a subsequent agreement not under seal, among other things, the time for performance being extended ; and assumpsit is the proper form of action. 1 Chit. Pl. (6th Amer. ed.) 119 ; *Lattimore* v. *Harsen,* 14 Johns. R. 330 ; *Dearborn* v. *Cross,* 7 Cowen, 50 ; *Munroe* v. *Perkins,* 9 Pick. 298 ; *Ratcliff* v. *Pemberton,* 1 Esp. R. 35 ; *Fleming* v. *Gilbert,* 3 Johns. R. 528 ; *Keating* v. *Price,* 1 Johns. Cas. 22 ; *Ford* v. *Campfield,* 6 Halsted, 327 ; *Erwin* v. *Saunders,* 1 Cowen, 250. By the second contract the defendant agrees to keep certain machinery and tools in repair, which, by the first, were to be kept in repair by the plaintiffs, as a condition precedent ; and in covenant on the first contract they must have averred performance of this condition, and they would not have been allowed to show that it had been dispensed with in the subsequent agreement. *Heard* v. *Wadham,* 1 East, 631 ; *Cook* v. *Jennings,* 7 T. R. 381; *Littler* v. *Holland,* 3 T. R. 590, and note ; *Philips* v. *Rose,* 8 Johns. R. 306 ; *Freeman* v. *Adams,* 9 Johns. R. 115 ; *Jewell* v. *Schroeppel,* 4 Cowen, 566. There was a new consideration, and on this ground assumpsit will lie. 1 Chit. Pl. (6th Amer. ed.) 118, 119 ; *Ashbrooke* v. *Snape,* Cro. Eliz. 240 ; *Miller* v. *Watson,* 7 Cowen, 39.

The agreement to give the defendant the exclusive use, or an equivalent thereto, of the south water-wheel, &c., and to give him the control of tools, machinery, rooms, &c., was a demise of the water-wheel, rooms, &c. The plaintiffs could not have turned him out during the term limited for the per-

formance of the contract. His work was to be the rent *Tisdale* v. *Essex,* Hob. 34 *b* ; *Pomfret* v. *Ricroft,* 1 Wms's Saund. 321 ; *Rhodes* v. *Bullard,* 7 East, 120. And unless there be a covenant to that effect, the lessor is not bound to keep the demised premises in repair. The plaintiffs did nothing to impair the water power, and they did not warrant a constant supply of water. *Pomfret* v. *Ricroft,* 1 Wms's Saund. 321 ; *Balfour* v. *Weston,* 1 T. R. 310 ; *Doe* v. *Sandham,* 1 T. R. 705 ; *Monk* v. *Cooper,* 2 Str. 763 ; *Fenner's Case,* Owen, 25 ; *Broughton* v. *Conway,* Dyer, 240 ; *S. C.* Moore, 58 ; Com. Dig. *Covenant, E,* 3; *Hayes* v. *Bickerstaff,* Vaugh. 118 ; *Ellis* v. *Welch,* 6 Mass. R. 246 ; *Dudley* v. *Folliott,* 3 T. R. 584 ; 2 Wms's Saund. 178, note 8. Platt on Cov. 140, 198 ; *Fowler* v. *Bott,* 6 Mass. R. 63 ; *Phillips* v. *Stevens,* 16 Mass. R. 238. The defendant contends that the plaintiffs were to warrant the power of the south water-wheel *or an equivalent.* The plaintiffs say, that whether they should furnish "an equivalent," depended on their election The alternative was a reservation for the benefit of the plaintiffs. Co. Litt. 145 *a* ; *Layton* v. *Pearce,* 1 Doug. 15 ; *Chippendale* v. *Thurston,* 4 Carr. & Payne, 98.

But the plaintiffs did, in fact, offer the defendant a power by steam, which he said was an equivalent. If it should be urged that this shows the plaintiffs' own construction of the instrument, the answer is, that the instrument must be construed by itself. There are various reasons why they should make the offer, independently of their view of the meaning of the contract. *Baynham* v. *Guy's Hospital,* 3 Ves. 298 ; *Eaton* v. *Lyon,* 3 Ves. 694 ; *Moore* v. *Foley,* 6 Ves. 237 ; *Iggulden* v *May,* 9 Ves. 333 ; *S. C.* 7 East, 244 ; *S. C.* 2 New Rep. 45..

The right to recover back the sum of $ 250, is proved by the mortgage itself.

*Peabody* and *E. Washburn,* for the defendant. The original instrument was the deed of the defendant, and the action ought to have been *covenant broken.* Cruise's Dig. *tit.* 32, Deed, c. 1, § 24 ; Com. Dig. *Fait, A,* 2 ; *Adams* v. *Bean,* 12 Mass. R. 137 ; *Warring* v. *Williams,* 8 Pick. 325 ; *Banorgee* v. *Hovey,* 5 Mass. R. 11 ; *Kimball* v. *Tucker,* 10

Mass. R. 192. The unsealed memorandums are not to be regarded as varying the first-instrument, but the three writings were separate entire contracts. In the second, the defendant, in consideration of $ 250, agrees to do certain work, which before the plaintiffs were bound to perform. The third is an accord and satisfaction for breaches previous to the 11th of October, 1833, and a purchase by the defendant of an extension of the time for the performance of his contract. The supposed neglects on the part of the defendant took place within the period limited for the performance of the contract under seal, and that contract remained in force, and the plaintiffs should have declared upon it ; and the defendant must then have pleaded the extension of the time and performance within the extended time, if his defence rested on that ground. *Fleming* v. *Gilbert,* 3 Johns. R. 528 ; *Twopenny* v. *Young,* 3 Barn. & Cressw. 208.

The contract has been compared to a lease ; it is rather to be regarded as containing a license to the defendant to occupy and use a part of the plaintiffs' building and machinery for a certain period, at particular hours, and for a certain purpose. The defendant was a mechanic hired by the plaintiffs to do certain work for them, and they were to furnish him with materials, tools, machinery, and a certain amount of water power. The exception of *power* for the boiler-house, shows that *power* was the thing to be furnished. Perk. § 639. If this is a matter of doubt on the face of the contract, the act of the plaintiffs in offering the defendant steam power, is a legitimate aid for ascertaining the true construction of the instrument.

If the plaintiffs failed to give the defendant a power equal to that of the south water-wheel, deducting the power for the boiler-house, or to furnish him with materials, he was absolved from the performance of his engagement, for these are conditions precedent, and if they were prevented by an act of Providence, they are nevertheless bound by their covenant. *Brecknock Company* v. *Pritchard,* 6 T. R. 750 ; *Phillips* v. *Stevens,* 16 Mass. R. 238 ; *Fowler* v. *Bott,* 6 Mass. R. 63.

If an equivalent power has been offered to the defendant, it was under such circumstances that he was justified in rejecting the offer, unless the plaintiffs would indemnify him for the damage he had sustained up to that time

The money counts are not sustained. The mortgage shows that the advance of money was made under an express written contract, which is still open, and which specifies the mode in which the plaintiffs shall be reimbursed. They cannot resort to an implied promise. *Toussaint* v. *Martinnant*, 2 T. R. 105 ; *Gibbs* v. *Bryant*, 1 Pick. 121 ; *Taylor* v. *Hare*, 1 New Rep. 260 ; *Hunt* v. *Silk*, 5 East, 449 ; *Davis* v. *Street*, 1 Carr. & Payne, 18 ; *Weston* v. *Downes*, 1 Doug. 23 ; *Towers* v. *Barrett*, 1 T. R. 136.

PUTNAM J. delivered the opinion of the Court. We all think that the instrument produced by the plaintiffs was a deed sealed by the parties therein named.

It was contended for the plaintiffs, that it could not be legally considered to be a deed, because the parties do not say that they have affixed their seals, but only that they have placed their hands to the writing. But it has been settled, that words indicating that the parties have affixed their seals, are not absolutely necessary. It is sufficient if that should otherwise appear to have been done. *Goddard's Case*, 2 Co. 5.

Now seals are in fact affixed to the instrument produced, and the legal presumption is, that they were placed there as the seals of the parties. That presumption must prevail until it should be rebutted by competent evidence.

It has been said that the seal does not appear to be one of a corporation. But a corporation as well as an individual person, may use and adopt any seal. They need not say that it is their common seal. This law is as old as the books. Twenty may seal at one time with the same seal.

The indenture was made in April 1833, and the defendants were to have manufactured the plane-irons in one year from the first day of July then next.

On the 11th of October, 1833, the parties made a new agreement, extending the term of the contract four months beyond the first day of July, 1834.

Now the object of the plaintiffs, in this action, is to recover damages from the defendant for not making the plane-irons. If they had brought an action of covenant upon the indenture, they must have set forth the covenant and averred, among other things, that the defendant was to have accomplished the work

n July, 1834, and the defendant might have pleaded the exten-
sion of the time to November, 1834, by the new agreement ;
and the action upon the deed would have been defeated.   The
new agreement was by writing not under seal, but it appears to
have been made upon sufficient consideration, and it is of as
much force as if it had been under seal.   So the defendant
was not liable to perform the contract strictly according to the
terms of the indenture, but according to the new agreement,
and assumpsit only could be maintained upon the new agree
ment.

The indenture was not destroyed by the new agreements,
but remained in full force in all respects excepting only inso-
much as it was affected by the new agreements.   For any
breach arising before the new agreements were entered into,
the remedy would be in covenant upon the deed.   " Where
(says *Bayley* J., in 3 Barn. & Cressw. 208, *Twopenny et al.* v.
*Young*) there is that in an instrument which shows that the
parties intended the original security to remain in force, the
new one has not the effect of extinguishing it."   In the new
agreement of the 11th of October, 1833, it is said expressly,
that all other parts of the indenture were to remain the same.
The action is therefore properly brought in assumpsit.

But it is contended for the defendant, that the plaintiffs have
not given or furnished to the defendant the water or other
equivalent mill power, during regular working hours while he
would have been employed in manufacturing the plane-irons,
and that this was a condition precedent ; and therefore, inas-
much as the plaintiffs have not furnished the mill power, the
defendant is not liable for any breach of the contract on his
part.   On the other hand, the plaintiffs contend that they were
not bound to warrant the *continuance of the power of the south
water-wheel* to the same extent as it was when the contract was
made ; but if they were, that they have offered to give the
defendant an equivalent power from their steam-engine , and
the question is, whether it was lawful for the defendant to refuse
to go on with the contract unless the plaintiffs would pay him
for the damage which he sustained by the interruption.   The
first and obvious reflection is, that there is no express stipula-
tion which covers the debateable ground.   The case finds that

Mill Dam
Foundery
v.
Hovey.

the plaintiffs had nothing to do with keeping the dam and gates in repair. That duty was to be done by the Boston Water Power Company. The defendant had nothing to do with the contract between the plaintiffs and the Boston Water Power Company. But the plaintiffs were certainly bound to furnish the materials and the mill power for manufacturing, before the defendant could be called upon to do the work. So far it is very clear that there was a duty created upon the plaintiffs, which was to be performed as a condition precedent. But in the indenture they are to make good all accidental breakages (excepting some small articles) that might happen to the machinery, without delay. Now if the machinery had broken by accident, and it were unavoidable to stop the work while the machinery was repaired, it seems to us to be very clear, that the loss from the interruption, which should fall upon the defendant during the time of making such repair, should be borne by him.

The defendant was, by the new agreement, to repair all breakages of every description or kind that might happen to the machinery, excepting any accident to the fly wheel of the rolling mill, in good and workmanlike manner. Suppose the fly wheel had broken and that it became necessary to get a new one, which would cause the delay of a week or more; it would seem to us to be very clear that the loss which should arise from that account, should fall partly on one and partly on the other, viz. the plaintiffs would be obliged to be at the expense of the new wheel, and the defendant would be obliged to bear the loss which should arise from the interruption of his work during the time between the breaking of the old and putting in the new wheel. This construction, in the absence of any express stipulation or provision touching the loss from the stopping of the work to make such a repair, would seem to be reasonable and conformable to the true intent and meaning of the parties to be collected from their contract. We are aware of the rule concerning a duty created by operation of law, and one created by the express stipulation of the parties. In the former case, if the party is disabled without his fault, he is to be excused, as in waste, where the house or wood is destroyed by tempest. In the latter case, that is, where the duty is cre-

ated by the act of the party, he must perform it notwithstanding he was in no fault ; as if he covenants to pay rent during the term and the house should be burned without his default, he must pay the rent. He should have protected himself by his contract, if such a liability was not intended to be assumed. *Fowler* v. *Bott*, 6 Mass. R. 63.

We hold the plaintiffs therefore to be bound to provide the mill power, to the extent which existed when the indenture was made ; they were bound also to furnish the necessary materials ; and we hold the defendant to be bound to do the work.

But in the case above put, of the breaking of the fly wheel, it is evident that while the plaintiffs were making the necessary reparation of the old wheel or making and substituting a new one, the work must stop, and laborers could not be employed during the regular working hours, (to use the words of the contract,) as they would have been if no accident had happened to the machinery, and nevertheless the defendant would be without any remedy for the interruption. In such an event the party bound to repair must be at the expense of repairing, and the other party must probably lie by and sustain some damage from the misfortune.

Now, if this would be the reasonable result, and according to the true intent and meaning of the parties in respect to the water-wheels, we do not see why it should not be extended to the case of an accident that might happen to the dam, which should occasion a partial or total loss of the water power for a limited time, thereby producing an interruption of the work. The plaintiffs are held to provide the water power, or an equivalent, without delay, that is, in a reasonable time. It makes no difference whether the dam should be repaired by them or by the Boston Water Power Company, who grant to them. The plaintiffs must see to it, and if they repair, or any persons liable to them repair the dam in a reasonable time, without unnecessary delay, or if, in a reasonable time and without any unnecessary delay, they furnish a steam power equivalent to the water power applicable to the south water-wheel and offer it to the defendant, they do all, touching the mill power, which is required of them to be done, in virtue of their contract. And during the interval, the damage which may arise

to the defendant from the necessary interruption of the work, must be sustained by him. It is not the intended meaning of the contract, that he should have a remedy over against the plaintiffs for such an interruption. And such a temporary calamity, an accident, is not to be deemed or taken to be a sufficient cause for a dissolution or termination of the contract. We are therefore all of opinion, that the defendant has been guilty of a breach of the contract in refusing to go on after the breaking of the dam and repairing of the same, if done in a reasonable time and without unnecessary delay, or after the offer in a reasonable time and without unnecessary delay, of an equivalent mill power from steam.

And we all think that the plaintiffs are not entitled to recover back the money advanced by them upon the contract. It was paid according to the terms of the contract, to the benefit of which contract the plaintiffs are legally entitled. They will have a right to recover damages of the defendant for the breach of that contract, but they will not be entitled to recover back the money paid by them to the defendant before the breach of it.

In conclusion, we are all of opinion, that the action is well brought in assumpsit, for the reasons before stated ; and that the nonsuit shall be taken off, and a new trial shall be granted. Whether the dam was repaired, or the offer of the steam-power equivalent to the water power applicable to the south water-wheel, was made in a reasonable time and without unnecessary delay, will be for the determination of the jury. If not, then it would follow that the plaintiffs cannot recover, for that duty rested upon them as a condition precedent, as is before stated. If that condition was performed in manner before stated, then the jury will assess the damages for the plaintiffs which have been occasioned by the breach of the contract on the part of the defendant.

At November term 1836, the cause was again tried, before Shaw C. J.

It appeared that after the making of the contract of April, 1833, and between July and October, the plaintiffs put the defendant into the possession of the shops, tools and machinery,

including the south water-wheel, and on his requisition furnished him with a large quantity of iron and steel, upon which he commenced the work of manufacturing plane-irons. Prior to the 11th of October, some difficulties and complaints of breach of contract had mutually arisen, which were settled by the agreement of that date, indorsed on the original contract. On the 14th of October, whilst the work was in full and apparently successful progress, the dam of the full basin gave way, as before stated. The Boston Water Power Company proceeded immediately to repair the dam, and the water power was restored as soon as it reasonably could be, which was on the 7th of March, 1834. After the breaking of the dam, the defendant proceeded with the use of the south wheel as a tide power, to prosecute his work, but less advantageously and economically. The plaintiffs set up a steam-engine, which went into operation on the 27th of December, 1833, to supply in some measure the want of power for the whole works. On the 16th of November, 1833, the defendant made a requisition for a supply, to be furnished in December, of about thirty tons of iron and three tons of steel, being very nearly the balance of the quantity of materials requisite to complete the contract. The plaintiffs made arrangements with dealers in these articles to furnish them at the shortest notice, but they were not in fact furnished to the plaintiffs nor procured. The plaintiffs advanced money from time to time till December, when the defendant drew orders on them in favor of some of his workmen, which were not paid. The complaints and difficulties increasing, the defendant discharged many of his men in January and early in February, 1834. On the 8th of February he commenced an action against the plaintiffs for breach of contract, and on the 11th he delivered up the key of the plaintiffs' premises and left the work, and never afterwards resumed it. At that time a large quantity of plane-irons, partly wrought and in every stage of the process of manufacture, remained at the works. A small parcel of those most nearly finished were finished by the plaintiffs and sent to market · the residue remained in the same unfinished state till the autumn of 1834, and were then sold by the plaintiffs.

In the instructions to the jury some general principles of law

were laid down, which are recited on a subsequent page, (*p.* 437,) in the opinion of the Court. In applying them to the present contract, the jury were instructed, that the general stipulation of the plaintiffs in regard to the water power and the shops, machinery and apparatus, was divisible ; that so far as it was a stipulation that the defendant should be put into the possession and occupation of the premises, and that the apparatus, machinery, furnaces and tools, together with the south wheel, should be put under his control, it was a condition precedent, because this was necessary to enable him to perform his covenants ; but that the stipulations that he should have the *exclusive* use of the south wheel, and that he should have the use of *all* the shops and *all* the tools, and during the *whole* time, &c., were independent stipulations and not conditions ; so that if the plaintiffs had made some use for a short time, during working hours, of the south wheel, or withdrawn any of the tools, though it would have been a breach of contract, it could not be considered as the non-performance of· a condition exonerating the defendant from all further performance. As to the diminution of the water power, that if the plaintiffs had put the defendant in possession and given him the full benefit of the south wheel, with its full power, in the first instance, this was a performance of the contract thus far. If they were under any express or implied obligation to furnish him with a power equal to the full power of the south wheel, then if the dam was commenced upon and repaired, and the full power restored, as soon as it conveniently and reasonably could be done, and in the mean time the effect was, not an entire withdrawal or loss of the power, but a reduction and diminution of it, rendering it less useful and beneficial to the defendant, it was not a breach of a condition, which absolved the defendant from all further performance on his part. If the plaintiffs had voluntarily withdrawn the use of this wheel, without supplying an equivalent power, or had voluntarily or unreasonably failed to restore the water power, or cause it to be restored, within a reasonable time, the plaintiffs could recover no damage for any failure or breach of the contract of the defendant arising from such want of power.

The second ground of defence relied on at the trial, was,

that the plaintiffs had not furnished the defendant with stock and materials. The jury were instructed, that to furnish stock to some extent, and even to the whole amount, if that could be reasonably required, before commencing the work, was a condition precedent, because the defendant was to work on their materials. But if the plaintiffs, on the first requisition, had furnished a large quantity of materials, which he had accepted, and commenced his operations upon, in pursuance of the contract, then the obligation of the plaintiffs to furnish the remainder, from time to time, upon the defendant's requisition, so as to enable him to carry on the manufacture to the best possible advantage, was not a condition precedent, on the non-performance of which the defendant was discharged from all further performance of the contract ; but if the plaintiffs had failed in the performance of their contract in this respect, the defendant had a remedy in damages for this breach of the stipulation. This rule, however, was to be taken with this limitation, that if the defendant had substantially worked up all the materials, and substantially performed his contract as far as the materials would permit, and the plaintiffs refused to furnish the rest of the materials, the plaintiffs could maintain no action for the non-performance of the remainder of the work to be done, it being attributable to their own default ; besides which, they would be responsible on their contract, to the defendant, for any loss which he might sustain in consequence of not being so supplied with materials.

The jury were further instructed, that the advancement of money, from time to time, to pay the defendant's workmen, was not a condition precedent, on the non-performance of which the defendant was absolved from performance on his part.

A verdict was returned for the plaintiffs ; which the defendant moved to set aside.

*Peabody* and *E. Washburn*, supported the motion. In regard to conditions precedent, they cited Com. Dig. (Day's ed.) *Condition, B* 1, note ; *Kane* v. *Hood*, 13 Pick. 283 ; *Keighley's Case,* 10 Coke, 139 ; *Harrington* v. *Dennie*, 13 Mass. R. 94 ; *Couch* v. *Ingersoll*, 2 Pick. 300 ; *Thomas* v. *Cadwallader*, Willes, 496 ; Platt on Covenants, 20 *et seq.*, 70 *et seq.*

Mill Dam
Foundery
v.
Hovey.

*April 5th*
1837.

Mill Dam
Foundery
*v.*
Hovey.

*C. P. Curtis* and *B. R. Curtis*, for the plaintiffs, cited in regard to conditions precedent, *Stavers* v. *Curling*, 3 Bingh. New Rep. 355 ; *Ritchie* v. *Atkinson*, 10 East, 295 ; *Fothergill* v. *Walton*, 8 Taunt. 583 ; *Campbell* v. *Jones*, 6 T. R. 573 ; *Champion* v. *Short*, 1 Campb. 53 ; *Powers* v. *Ware*, 2 Pick. 456 ; *Carpenter* v. *Cresswell*, 4 Bingh. 409 ; *Havelock* v. *Geddes*, 10 East, 555 ; *Boone* v. *Eyre*, 1 H. Bl. 273, note.

*March* 11*th,*
1839

SHAW C. J. delivered the opinion of the Court. This cause was argued at March term 1837, of this Court, and has lain over, partly on account of the great pressure of business, and partly on account of the intrinsic difficulties of several of the questions involved in it. It arises upon a contract to a large amount, in which there are many stipulations upon both sides, and upon which there has been a great loss, to be borne between them. Each party claims that the loss has been occasioned by causes for which he is not responsible, and by means of the failure in the performance of stipulations and conditions on the other side, and each claims of the other large damages. Actions have been pending by each against the other in this county and in Worcester, which have been tried and argued. It has been several times under consideration, and has been much discussed ; and I regret to say, that the opinion, to which the Court have come, is not the unanimous opinion of all the judges.

The main question before us, has been upon the construction of that clause in the contract, by which the plaintiffs, the Proprietors of the Mill Dam Foundery, agreed to furnish the defendant with water power, or an equivalent, and the effect and operation of that provision upon the relative rights and obligations of the parties.

It appears by the report, that this action is *assumpsit*, founded on a contract under seal, entered into by the parties in April, 1833, for manufacturing a large number of plane-irons and soft moulding irons, which contract was afterwards altered and modified, and in other respects confirmed, by a contract not under seal, made in October, 1833. It has heretofore been decided, that the action was properly brought in *assumpsit*.

By the terms of the contract referred to, and made part of the report, it appears, that the defendant agreed to manufacture

ten thousand dozen plane-irons, and an indefinite number of soft moulding irons, at the plaintiffs' works, to be manufactured from materials furnished by them, and by the use of their manufactory and apparatus ; in consideration of which, the proprietors stipulated, on their part, " to furnish all the iron and steel and other materials used in or about said manufacture, the whole to be furnished as soon and as often as shall be reasonably required by said Hovey, to enable him to carry on said manufacture to the best possible advantage. The said proprietors also agree to furnish stock and materials for all such soft moulding irons as he shall be able to manufacture during said time, he furnishing the said proprietors with a memorandum of such stock as he may require for said irons. The said proprietors also agree to give to the said Hovey, with the exception of the power conveyed to the boiler-house, as now used, the exclusive use, or an equivalent thereto, of the south water-wheel, drums, gears, belts, &c. belonging thereto, during regular working hours, whilst he is employed in making said plane and moulding irons, they to keep the same in good repair, and to furnish the said Hovey and give him the control of all the tools, machinery, room and furnaces now in use, or which may be added to the plane-iron establishment."

In construing this contract, and applying it to the facts in the case, the great difficulty is, in determining which of these numerous provisions are conditions precedent, and which are mutual and independent stipulations. It seems to be well settled, that when there is a stipulation amounting to a condition precedent, the failure of one party to perform such condition, will excuse the other party from all further performance of stipulations depending upon such prior performance. But a failure to perform an independent stipulation, not amounting to a condition precedent, though it subject the party failing, to damages, does not excuse the party on the other side from the performance of all stipulations on his part. *Havelock* v. *Geddes*, 10 East, 555 ; *Boone* v. *Eyre*, 1 H. Bl. 273, note.

The general statement of the principles of law adopted, and which were embraced in the instructions to the jury, were as follows. That this was substantially a contract for work and labor, to be done by the defendant for the plaintiffs, he to work

on their materials with their tools and apparatus, upon their premises ; that the property in the materials being theirs when furnished to the defendant, the property in the manufactured articles was theirs when completed, and in all stages of the process of manufacture ; that by the agreement the defendant acquired no interest in the nature of a leasehold, in the premises, but a license therein, to enter upon and use them for the purposes of the contract ; and in contemplation of law, he was to be employed on premises, of which the plaintiffs were in possession ; that the defendant, in order to excuse or justify a non-performance on his own part, must show some non-performance on the part of the plaintiffs of some stipulation, operating as an express or implied condition, on the happening of which, either by the express terms of the contract or by the impossibility of proceeding further on his part, he was to be exempted from further performance.  The jury were further instructed, that when there are in a contract many mutual and executory stipulations, on both sides, in determining which are provisional and dependent and constitute conditions precedent, and which are mutual and independent, it is proper and necessary to consider the objects and purposes of the contract in its full extent, and to examine every provision and clause in the whole instrument, to determine the meaning and intent of the parties, and that in case of doubt, such a construction ought to be adopted, as may be best adapted to carry into effect the intent of the parties.

It was further held, that in order to construe a stipulation on one side, to be a condition precedent to an obligation to perform on the other side, it must in general appear, either.

1. That the undertaking on one side, is *in terms* a condition to the stipulation on the other ; as where one stipulates that he will perform the thing to be done, if the other shall have first performed some stipulation on his part ; and even when words are used, which might be construed to be a condition in their ordinary sense, they shall not be so considered, if such construction is not consistent with the intent of the parties. *Storer* v. *Gordon*, 3 Maule & Selw. 308.  The rule laid down in *Ritchie* v. *Atkinson*, 10 East, 295, and *Atkinson* v. *Ritchie*, ib. 530, is this, that whether a thing be a condition precedent.

depends on the reason and sense of the thing as it must have been understood by the parties, and it is to be collected from the whole contract : Or,

2. It must result from the nature of the acts to be done, and the order, in which they must necessarily precede and follow each other in the progress of performance. When the act of the one party must necessarily precede any act of the other, as where one stipulates to manufacture an article from materials to be furnished by the other, and the other stipulates to furnish the materials, the act of furnishing the materials necessarily precedes the act of manufacturing, and will constitute a condition precedent, without express words. *Thomas* v. *Cadwallader*, Willes, 496. But when the act of the one is not necessary to the act of the other, though it would be convenient, useful, or beneficial, yet as the want of it does not prevent performance, and the loss and inconvenience can be compensated in damages, the performance of the one is not a condition to the obligation to perform by the other : Or,

3. The non-performance on one side must go to the entire substance of the contract, and to the whole consideration, so that it may be safely inferred as the intent and just construction of the contract, that if the act to be performed on the one side is not done, there is no consideration for the stipulations on the other side. And therefore though there be a breach of an express or implied covenant on one side, attended with some loss and damage to the other, yet if it does not go to the whole consideration, and the loss can be compensated in damages, the stipulation must be construed to be independent, for breach of which the party sustaining such loss has his remedy by action, but it is not a condition precedent, upon the non-performance of which the other party is absolved from the performance of the stipulations on his part.

The principle may be illustrated by reference to stipulations in this contract. In the contract as it was first made, the company covenanted to keep the tools in repair, with certain exceptions ; in the subsequent agreement, this was modified, and the defendant stipulated, with some exceptions, to keep the tools in repair. A failure to perform this stipulation, in any particular, would have been a breach of contract, and might

occasion delay and loss to the other party ; but not being made in terms a condition to the performance of the other, not being in the strict sense of the term necessary to the performance of the other party, and not going to the whole consideration for the engagements on the other side, it would not be the breach of a condition precedent, absolving the other party from further performance, but an independent stipulation, the breach of which would be a cause of action for damages. *Stavers* v *Curling*, 3 Bingh. New Rep. 355.

These general views of the law, as they were expressed at the trial, and laid down and illustrated in the instructions to the jury, are approved and sanctioned by the Court, as principles and rules of law well settled upon principle and authorities, and applicable to the present case. But in applying them to the present case, and in the construction put upon the stipulation of the plaintiffs, in regard to furnishing mill power for the execution of the contract, by the defendant, a majority of the Court are of opinion, that the jury were not correctly, or rather were not fully and sufficiently instructed, and that for this reason the verdict ought to be set aside, and a new trial granted ; and in that opinion I concur.

The stipulation of the company, upon which the question arises, is as follows ; " The said proprietors also agree to give to the said Hovey, with the exception of the power conveyed to the boiler-house, as now used, the exclusive use, or an equivalent thereto, of the south water-wheel, drums, gears, belts, &c., belonging thereto, during regular working hours, whilst he is employed in making said plane and moulding irons, they to keep the same in good repair, [this altered by the subsequent agreement,] and to furnish the said Hovey and give him the control of all the tools, machinery, room and furnaces now in use, or which may be added to the plane-iron establishment."

The questions are,

1. What is the true construction of these stipulations, that is, what was the understanding and intent of the parties, as expressed by their respective stipulations : and,

2. Which of them may be considered to be conditions precedent, upon the non-performance of which the other contracting party is excused from further performance.

The distinction is now well settled, between an obligation or duty imposed by law, and that created by covenant or act of the party. When the law creates a duty, and the party is disabled from performing it, without any default of his own, the law will excuse him ; as in waste to a tenement, if the same be destroyed by tempest or enemies, the lessee is excused. But when the party by his own contract creates a duty or charge upon himself, he is bound to make it good, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract. 2 Williams's Saund. 422 a, note 2. The good sense of the rule seems to be this, that in a case where, if an event happen, it must inevitably cause loss and damage to one or the other of the contracting parties, the party who has contracted that such an event shall not happen, although he cannnot specifically perform that contract, because the event may happen through the act of God or inevitable necessity, yet he shall stand to that risk, and make good all the loss which shall occur in consequence of the happening of the event contemplated. The party thus contracting, takes the consequences. If the act to be done, is so far a condition precedent, that upon the failure to perform, the other cannot execute his part of the contract, he is absolved from further execution, although caused by means over which the contracting party had no control. But if the failure is such, as not to prevent the other party from executing, though it may subject him to inconvenience, yet it is the breach of an independent covenant, if a breach at all, and may give the other party a claim for damages by action, to indemnify him against the loss actually sustained.

But in construing such a contract, to determine whether there be a breach, especially when expressed in general terms, it would not always conform to the intent of the parties, to construe every stipulation literally, when implied qualifications and exceptions are obviously necessary, to carry into effect the intentions of the parties, to be collected from the whole contract, and to be examined under the lights thrown upon it by the obvious purposes and objects to be accomplished by it. Parties who enter into a contract in reference to the carrying on any branch of business, are presumed to know and under-

stand how that business is usually carried on, how it must ne-
cessarily be conducted, and to have reference to such known
circumstances in their contracts.   For instance, should a party
having possession of a manufactory, with a water power only,
stipulate with another having adjoining premises, to furnish
these premises with water power, during all regular working
hours for several years, without exception, we think it is to be
presumed that they know that such power may be, and must
necessarily be occasionally interrupted ; that · on a few very
cold days in winter, the ice will so clog the wheel, that it may
take several hours to clear it, that a freshet may carry away a
gate, which it will take a few days to replace ; and the cove-
nants, though in general terms, are to be taken with these
necessary and implied exceptions.   What are to be deemed
occasional interruptions, and what a reasonable time to remove
them, must depend upon the subject matter, the knowledge and
experience of those conversant with the subject, and all the
circumstances of the case, as applied to the subject matter and
the nature and terms of the contract.   This is the principle
expressed in the opinion formerly given, in an earlier stage of
this case, that where a stipulation is made in general terms, it
is to be construed with such implied exceptions and qualifica-
tions, as necessarily grow out of the subject matter, and there-
fore must be presumed to have been in the contemplation of
the parties.   The principle is, that when both parties contem-
plate an end to be accomplished by definite means, they know
how these means are to be applied, and they expect that the
end will be accomplished, as such an end is known by experi-
ence to be and must necessarily be accomplished by such
means, and not otherwise.

But the question recurs upon the meaning and effect of this
stipulation of the company, and in this respect a majority of
the Court are of opinion, that the instruction to the jury was
incorrect or deficient.

The company covenanted to give the defendant the use of
the south water-wheel or an equivalent.   That this was a stip
ulation for the use of mill power, and not a demise of any part
of the works, is manifest from the exception.   The exception
is of the power conveyed to the boiler-house.   The subject ex·

cepted, being out of the subject granted, must be of like kind, and in this case must be power. And of course the alternative stipulation to furnish an equivalent, must be construed to mean, an equivalent power, for the purposes for which it was to be applied, in manufacturing the irons to be made, conformably to the objects and purposes of the contract. The Court are of opinion, that under this contract, the company had the election to furnish the one power or the other, not only at the commencement, but afterwards during the whole time contemplated for the execution of the contract, and that they might change from one to the other, from time to time, it being done without occasioning delay or inconvenience to the other party. The force of the south water-wheel, was the measure of the power applicable to manufacturing purposes, which the company undertook to furnish, and the mode was at their option. The execution of so large a contract contemplated a considerable lapse of time, and the contract itself looks to changes and alterations in the works during the time, by a provision, not only that the defendant was to have the control of the machinery, room, and furnaces, then in use, but such as might be added to the plane-iron establishment.

And as the company had an election to furnish the one power or the other, at their option, so they were bound to furnish one or the other, during the whole time, subject to such occasional and casual interruptions, as must necessarily attend the use of mill power. The rule of law is, that where the condition of a bond is to do one of two things, if one cannot be performed, unless it has become impossible by the act of the obligee, the obligor is bound to perform the other. To pply these rules to this alternative contract ; if the water power failed, and could not be restored within a reasonable time, regard being had to the nature and extent of the contract, and the time limited for its fulfilment, and a steam power of equal value for mill purposes, could be furnished within a reasonable time and at a reasonable cost and expense, the company were bound to furnish such an equivalent steam power. If this power was furnished within a reasonabl〉 time, and without unreasonable restrictions and limitations upon the use of it, and placed substantially under the control of Hovey, then the com-

pany complied with their contract in this behalf, and there was no breach of a condition precedent, which absolved the defendant from further performance on his part. But, supposing the water power could not be restored within a reasonable time, and a steam power could be furnished at a reasonable expense, if the company did not furnish this power within a reasonable time, and did not place it substantially under the control of the defendant, then there was a breach of contract on their part.

And the Court are of opinion, that as the defendant's contract was to work on the premises of the company, with their machinery and apparatus, the furnishing of mill power was a condition precedent to the performance of the defendant, because without it no essential part of the work could be done. But this is to be taken with considerable qualifications.

1. Such breach of the condition could only excuse the defendant from such part of the contract, requiring the use of mill power, as remained to be performed, when the breach of condition happened.

2. A mere slight, temporary, and inconsiderable suspension of the mill power, not manifesting any deliberate purpose of the company to withdraw or withhold the power, would not amount to the neglect or refusal to furnish power, which would constitute a breach of condition. There must be some vote of the company, some deliberate act on the part of their authorized agents, showing an intent and purpose on their part to withhold the mill power, or such continual neglect, after notice and knowledge of its failure, as to manifest such intention. It is not therefore any temporary casting off of bands or other temporary interruption of the mill power, even by an agent of the company, which would amount to a breach of a condition precedent. To have that effect, the law looks to such substantial refusal or neglect to furnish mill power, as puts it out of the power of the other party to proceed in the execution of his contract.

3. Although such suspension or interruption of the mill power, might be construed to be the breach of a condition precedent, which would warrant the other party to break off, and excuse the further performance of the contract ; yet it is at his option to do so, or to waive the breach, and proceed

with the contract. And if he continues in the performance of the contract, until the impediment is removed and the power reëstablished, this amounts to a waiver of the forfeiture, and the party will no longer be excused thereby from the further performance of the contract.

And in reference to this part of the case, and with a view to a new trial, if one should take place, the Court think it proper to add, that if the evidence should be as it has been on every trial heretofore, whether the failure to furnish the stipulated power, between the time of the breaking of the dam and the completion of the steam-engine ready for use, was the failure of a condition precedent or not, warranting the defendant to give up the performance of the contract, is immaterial, because in fact, as that evidence shows, he went on with the execution of the contract, until the steam-engine was put in motion, and ready for use, about the 7th of December. And such continuance was a waiver of the breach of condition to that time.

As the opinion now expressed may seem to be in some measure in conflict with those heretofore expressed, in a former stage of this case, it seems necessary to compare, and, if possible, to reconcile them. If this cannot be done, the Court can only say, that so far as they differ, the former opinions were formed and expressed through haste and want of sufficient consideration.

To determine whether there be any such difference, it seems necessary to consider what was the case then before the Court. It came up, or nonsuit directed by the Court, for the purpose of considering several points reserved. The main question argued was, whether the action was rightly brought in *assumpsit* ; the Court held that it was. The plaintiffs then gave evidence, that the defendant had actually commenced his operations with the power of the south water-wheel, and proved the circumstance of the breach of the dam. The plaintiffs then called the agent and treasurer of the company, who testified, that he applied to the defendant to go on with his contract, and that he declined going on, unless the witness would settle with him, and pay him for the loss he alleged that he had sustained by the interruption from the loss of the water power. The witness assured him that he should be compensated, &c. The

company erected a steam-engine, shortly after the breaking of the dam, for their own use, and by the wish or request of the defendant, a third boiler was added to the engine, with the necessary gearing to connect with the defendant's plane-iron machinery. The witness offered the defendant power from the steam-engine, which the defendant said would be equivalent to the south water-wheel.

On this evidence the plaintiffs' counsel contended that they were not bound to warrant the continuance of the power of the south water-wheel ; but that if they were bound to warrant the continuance of power as alleged by the defendant, they had offered him an equivalent power, from the steam-engine, and that the refusal of the defendant to go on with the contract, unless the plaintiffs would pay him for the loss he had sustained, was unlawful. Some other points were reserved, not now material.

Such was the case, a nonsuit having been ordered, upon which the Court were called upon to adjudicate. The question was, whether after the breach of the dam, the plaintiffs having without delay erected a steam-engine, and offered the defendant a power from it, equivalent to the power originally stipulated for, the defendant was excused or justified, from the further performance of the contract on his part. And the Court were all of opinion, that he was not so justified or ex cused, and that the nonsuit should be taken off and the plaintiffs allowed a new trial. This was the extent to which the facts in that case rendered it necessary to go, in the decision of that case. The facts shown by that report, and not contested on that trial, were, that within a short time after the dam broke, and the water power, as a perpetual power, failed, and before the defendant had ceased to go on, in the execution of his contract, the plaintiffs actually erected a steam-engine, and offered to the defendant the equivalent power from that engine, and requested him to go on, which he declined doing, upon another, distinct, and untenable ground, that is, because his past damages were not adjusted and paid. We are all, upon further consideration, still of opinion, that in such case the defendant was not excused, and the plaintiffs would be entitled to recover for his breach of contract.

But beyond this point, the difference of opinion commences. One of the judges is of opinion, and considers that it was decided in the former case, that by the true construction of the contract, the company had a right of election to assign to Hovey the south water-wheel or an equivalent, before the commencement of the work ; that after such assignment had been made, it was the same thing as if there had been no alternative obligation, but a single stipulation to furnish power from the south water-wheel ; and then, if that was restored as soon as it could be, though at the interval of many months, and though another power might be furnished in a few weeks, the plaintiffs were under no obligation to furnish the latter. Whereas the other members of the Court are of opinion, and consider that the former decision is not opposed to it, that the election of the company to furnish one or the other power, at their option, and their obligation to furnish one *or* the other, continued during the whole period necessary for the execution of the contract ; that under this obligation, if one mode of furnishing the power became practically impossible, and the other mode was practicable, and was in fact established within a short and reasonable time, the company were bound to furnish the equivalent power. In determining that there was no breach of condition, from the temporary suspension of the power, arising from causes over which the plaintiffs had no control, and that it must be deemed temporary, if the power was restored with all due diligence and within a reasonable time, it was considered, that what is a reasonable time, must depend upon the nature of the contract to be executed, and of the work to be done in order to restore the power. This latter of course depends upon the contemplated mode of restoring it. If the obligation had been absolute and single, to supply the water power as then furnished by the south water-wheel, and the dams and other hydraulic works, as they existed and were well known to the parties, I am not prepared to say, if the dams were repaired with all reasonable despatch, as soon as the work could be done, that it was not done within a reasonable time, so that the suspension of it should not be deemed the breach of a condition precedent. But if the obligation contemplated two modes of furnishing mill power, and one became practically destroyed for man

facturing purposes, and the other could be restored within a reasonable time and at a reasonable expense, and was in fact so restored, and the water power could not be restored under many months, then those, whose opinion I am now stating, are of opinion, that a delay on the part of the company, to furnish the stipulated power, until the water power could be restored, and a refusal to furnish power from the steam-engine, would be unreasonable, must be considered as a refusal to comply with a condition precedent, and would excuse the defendant from further performance on his part. It must therefore depend upon the proof of facts, which were considered as proved and not controverted in the case under review, but which are now stated as in controversy, though the evidence does not appear at large in the present report.

Although for the reasons already given, there must be a new trial, yet as some other points have been reserved and argued, it seems proper to consider them, in reference to such new trial.

2. A second ground of defence relied on at the trial, was that the plaintiffs, in violation of their stipulations, had no furnished the defendant with stock and materials, and so had broken a condition precedent and excused him.

The stipulation in the contract is this; "The Proprietors of the Mill Dam Foundery, bind and obligate themselves.to the said Hovey, to furnish all the iron and steel and other materials, used in and about said manufacture, the whole to be furnished as soon and as often as shall be reasonably required by said Hovey to enable him to carry on the said manufacture to the best possible advantage. The said proprietors also agree to furnish stock and materials for all such soft moulding irons, as he shall be able to manufacture during said time, he furnishing the said proprietors with a memorandum of such stock, as he may require, for said irons."

Upon this part of the case, the Court are of opinion, that furnishing stock and materials to some extent, and even to the whole amount, if that could be reasonably required, before commencing the work, was a condition precedent to any obligation on the defendant to perform, because he was to work on their materials. But if the plaintiffs, on the defendant's first

requisition, had furnished a large quantity of materials, which he had accepted and commenced working upon, he was bound to go on, and finish the work on those materials ; a subsequent neglect or refusal to furnish further materials, would not excuse the defendant from performance, so far as to finish what he had begun, though it would be a breach of contract, for which the defendant would have his remedy by action. And it would also excuse the defendant for all damages, arising from his non-performance, so far as it was occasioned by the want of the rest of the materials. For damages occasioned by non-performance of such part of the contract, the plaintiffs could not recover, because it would be attributable to their own default ; but they would be liable in a cross action, because it would result from a breach of their stipulations.

But to constitute such breach of condition it must be shown, that there was a reasonable requisition for materials, on the part of the defendant, and a refusal or neglect to furnish them on the part of the plaintiffs. Here the defendant was to do the first act, making a reasonable requisition. What was a reasonable requisition, is a mixed question of law and fact, depending upon the state of the works, the quantity of materials on hand at the time, the intentions and dispositions expressed and manifested by the defendant, and all the circumstances of the case. If at the time of the large requisition for materials, made on the 16th of November, it was not the actual and sincere intention of the defendant to go on, and complete his contract, with the power as it then was, and as it would be when reinstated, and without annexing conditions which he had no right to annex, then the requisition was not reasonable, and the neglect or refusal to comply with it was not a breach of condition. So, if under all the circumstances of the case it was not a reasonable requisition.

There must have been a refusal or neglect on the part of the company. A mere delay to furnish materials, although it might prevent the defendant, in some particulars, from working to the best possible advantage, and subject him to some slight loss, would not be a breach of condition, for the reasons already given, and because it may be compensated in damages. But to constitute such refusal or neglect, it must be shown, either

Mill Dam
Foundery
*v.*
Hovey.

that there was an express refusal by the company, or such continued delay, after a reasonable requisition, for such length of time, as to warrant the jury in inferring, that it was not their intention to furnish them.

3. The next ground of defence relied on at the trial, was, that the plaintiffs had violated their part of the contract in not advancing money to pay the defendant's workmen. The stipu lation relied on is as follows, " Said proprietors further agree to advance to said Hovey, such sums of money as shall enable him to settle with all such of his hands, as conform to the rules and regulations of the proprietors aforesaid, on such terms as they settle with their own hands."

The Court are of opinion, that this stipulation to advance money for the pay of workmen, was not a condition precedent, that the failure did not go to the whole consideration, that the loss, in case of breach, if any, could be compensated in dam ages, and that the stipulation was independent.

Should this cause be again tried, the Court are of opinion, that the jury ought to be instructed in reference to the contract, the subject matter and the evidence, as it appears on the several reports, as follows :

1. The jury are to consider whether the breaking of the dam on the 14th of October, 1833, was a substantial suspension and destruction for the time being, of the water power derived from the company's south water-wheel, for manufacturing purposes, such as the execution of the defendant's contract required. If it was not substantially such an entire suspension of the power, for manufacturing purposes, but only a temporary diminution, subjecting the defendant to some loss and inconvenience, then it was not a breach of a condition precedent which excused the defendant from further performance, although he might have a remedy by action for his loss ; but in that event the defendant was bound to go on and execute his contract, and must stand responsible to the plaintiffs for the damages which they have sustained, if any, from such failure.

2. But if the breaking of the dam was an entire suspension, and for the time being, a destruction of the water power for manufacturing purposes, and it was probable, from the nature and extent of the breaches in the dam, that the power could

not be restored within the lapse of several months, then the plaintiffs were bound by their alternative contract, to furnish a power equivalent for manufacturing purposes, if that could be done at a reasonable expense within a few weeks, and to place the power to be derived therefrom, under the control of the defendant, to be used for the purposes of his contract.

3 If the breaking of the dam was a destruction of the water power for the time being, for manufacturing purposes, still the defendant had no right to treat it as a breach of a condition precedent, and absolve himself from the further performance of the contract on his part, provided the dam could be restored, or an equivalent power be furnished from a steam-engine, within a reasonable time, regard being had to the nature and magnitude of the contract, and the circumstances of the parties.

4. Supposing the steam-engine to be got ready to operate by the 7th of December, and that the defendant continued in the execution of his contract up to that time, it is immaterial to this inquiry, whether this was done within a reasonable time or not ; because the continuing to perform was a waiver of any breach of condition up to that time, and if the defendant was furnished with the steam power then, he could not excuse himself from performance, on the ground of such previous breach of condition. Although in the same case, if he had suffered loss by the delay in furnishing the power, he would have a remedy by action for the damages he had thereby actually sustained.

5. In reference to a point, heretofore considered of some importance in this cause, if the defendant had a just and legal claim upon the plaintiffs, for damages arising from the loss and diminution of power, and the delay in restoring it, he could not excuse himself from further performance of the contract on his part, on the ground of the refusal of the company to adjust and pay such damages ; his remedy therefor, if he had any, was by action on the covenants.

6. If the breach of the dam was a destruction, for the time being, of the water power for manufacturing purposes, and if before the defendant broke off and left the work, the steam-engine was put in operation, the jury will consider, upon the evidence, whether a portion of the power of this engine, equiva-

lent for manufacturing purposes to the power of the south water-wheel, was substantially placed under the control of the defendant, to be used under his direction in the execution of the plane-iron contract.  If it was, then the defendant was bound, with such power, to go on and complete his contract, and having failed to do so, he is liable to the plaintiffs for all the damages, which they have sustained, by reason of the loss of materials and profits, and generally in consequence of the defendant's non-fulfilment of the contract.   But if such equivalent power was not placed substantially under the control of the defendant, to be used at his discretion in the execution of the contract, then there was a breach of condition precedent on the part of the plaintiffs, the defendant was excused from all further performance of such part of his contract as depended upon the use of mill power, and the plaintiffs have no claim against him for any damage arising from such non-performance of the contract.

7.  That any neglect or refusal of the plaintiffs in November to furnish materials, if proved, would not excuse the defendant from that part of his contract which consisted in working up and finishing the materials already accepted and begun upon.

8.  That in order to charge the plaintiffs with a breach of condition, in not furnishing the large quantity of materials in November, 1833, it must appear, that the requisition, under all circumstances, was reasonable ; and that if it was not, *bonâ fide,* the sincere intention of the defendant to go on, and complete his contract, or if he annexed to it conditions, with which the company were not bound to comply, the requisition was unreasonable, and the neglect or refusal to comply with it was not a breach of condition ; otherwise it was a breach of condition, which would excuse the defendant from all claim of damages, arising from the non-performance of the contract, so far as occasioned by such want of materials.

9.  That a temporary delay in furnishing materials, though t amount to a breach of the stipulation of the plaintiffs, and give the defendant a claim to some damage, would not be a breach of condition.   It must be an express refusal, or such neglect, for so long a time after reasonable requisition, as to manifes'

an intent on their part, not to furnish the remaining materials, and to prevent him from finishing his contract.

10. That the refusal to advance money, not being the breach of a condition precedent, would not excuse the defendant from performing the contract on his part.

An action of assumpsit for breaches of the same contract was brought in the county of Worcester, by Hovey against the Proprietors of the Mill Dam Foundery, which was tried at Worcester, at April term 1837, before *Morton* J. The principal facts proved at the trials of the action pending in Suffolk were proved likewise in this action.

The defendants offered in evidence the deposition of Thomas J. Eckley, which was objected to, on the ground of the interest of the deponent, and was not admitted. The particulars in relation to such interest are stated in the opinion of the Court.

A verdict was returned for the plaintiff, which the defendants moved to set aside.

The case was argued by *C. P. Curtis* and *Newton*, for the defendants, and by *E. Washburn*, for the plaintiff.

At April term 1839, the verdict was set aside on the ground of the damages being excessive.

The following is an extract from the opinion of the Court, which was drawn up by

SHAW C. J. Another point discussed in the present case, it is necessary to consider and decide, with a view to a future trial of this cause. The defendants offered the deposition of Thomas J. Eckley, and he was objected to, as incompetent on the ground of interest, being, as alleged, liable in his individual capacity for the debts of the corporation, and so having a direct interest in the event of the suit. This objection was sustained, and the deposition rejected.

It appears that Eckley became a member of the corporation in September, 1833, and continued till September, 1835, during which time the breach of this contract took place, if at all, and thereupon the claim for damages, made in this action, accrued. This company was established by an act of incorporation, June 21, 1831, and were in terms made subject to the act (*St.* 1829, *c.* 53) defining the powers and duties of manu-

facturing corporations, passed February 23, 1830.   To that act, therefore, we are to look, to ascertain what are the personal responsibilities of individual members of the corporation.   Eckley testifies that he was the holder of five shares in the stock, that he afterwards reconveyed them to Ralston, of whom he had them, or to persons appointed by him, and received back the securities which he had given Ralston for them, and that Ralston had agreed to indemnify him against loss.   Still he was a regular holder of shares, and so appeared on the books, and if he was thereby individually liable for any judgment which might be recovered against the company, he was legally interested in the event of the suit, as he would be liable to third persons, although he had an indemnity.   The question must depend upon this, namely, whether by the law, as it then stood Eckley was under such a personal liability.

By *St.* 1829, *c.* 53, § 6, it is declared, that each and every member of a manufacturing corporation shall be liable for all debts and contracts, until the whole capital stock is paid in, and a certificate, made and signed by the officers, and sworn to, shall have been recorded in the registry of deeds.   And it is made the duty of the officers to make, file and record such certificate, of any additional stock, within thirty days from its payment, and the *officers* are made liable for the debts, in default of performing that duty.   The seventh section provides, that after such certificate shall have been recorded, no member of the corporation shall be liable to have his person or property taken on any writ or execution against such corporation, except for the causes thereinafter mentioned.   It then goes on to provide, that such corporation shall give notice annually, in some newspaper, of the amount of all assessments voted by said corporation and actually paid in, and all existing debts, and should any corporation fail to comply, the members thereof shall be liable, &c. for any debt then due.   By the tenth section the person and property of any and all members may be taken, &c. for any debt, to the payment of which they *shall have* become personally liable by the provisions of the act, or they may be proceeded against in chancery.   The circumstance, therefore, that Eckley has ceased to be a member, does not exempt him from personal liability, if that liability

attached whilst he was a member; and that responsibility did attach, if the corporation did not comply with the provisions of the act, by making and recording the certificates, and giving the notices thereby required. For, though a question was made, whether such a claim for unliquidated damages is a debt, within the meaning of the statute, we do not think it admits of a reasonable doubt, that all such claims for damages were intended to be included in the term " debts."

The question therefore resolves itself into this, whether in fact this corporation did comply with the conditions of the act.

It appears that the corporation, having a right to fix the amount of their capital at any sum under $ 200,000, fixed it by vote at $ 120,000, that the officers certified and made oath on the 23d of September, 1831, that it was paid, and this certificate was recorded on the 28th in the Norfolk registry of deeds. By a certificate published in 1834, by Eckley, treasurer, it appears that the capital stock was $ 140,000; from which it appears, that 20,000 had been assessed after the first assessment, and no certificate of it recorded within thirty days, or at any time afterwards. This rendered the officers liable, but not the members; and though Eckley was an officer, he might not have been one when the additional amount was assessed. Without deciding on that ground, whether he was liable, we are of opinion, that he was liable as a member, on the ground, that the corporation had not annually published the statements required by the act. The act is explicit, that they shall publish annually the amount of all assessments voted and actually paid in, and the amount of all existing debts. This giving public notice of the amount of capital by advertisement, is required in addition to the recording, and therefore the one cannot be a substitute for the other. The manifest object was, to enable the public to judge, from time to time, of the condition of such corporation, by enabling them at one view, to compare the capital with the debts. The notices published by Ralston in 1832 and by Eckley in 1833, contained no statement of the capital stock, and no certificate was published, conforming to the statute, until September, 1834, after the claim for damages, in this case, if at all, arose. The Court are therefore of opinion, that Eckley was interested in the event of the suit, and that his testimony was rightly rejected.

Mill Dam<br>Foundery<br>v<br>Hovey

Mill Dam
Foundery
*v.*
Hovey.

It may be useful to state in this connexion, that in any cross action brought by the company against Hovey, this objection to the competency of Eckley cannot arise. In any such suit, no judgment can be recovered against the company except for costs ; but as the liability on such judgment would first accrue, on the rendition of the judgment, and as Eckley has ceased to be a member of the corporation, he could in no event be liable. The only color for considering him as interested, in such case, is this ; that if Hovey should recover a judgment against the company, the witness might have an interest in enabling the company to recover a judgment against him, which might be set off in satisfaction of his judgment, and thus exonerate the witness from his liability to pay it. But we think that is too remote and contingent, and is not a direct interest in the event of the suit of the company against Hovey.