## Newell v. The Grant Locomotive Works, Wm. K. Ackerman and James H. Wilson, Assignees.

1. ASSIGNMENT—*What is Not.*—An agreement to pay out of a particular fund is not an assignment of such fund or of any part thereof. To constitute such assignment the assignor must not retain control over the fund, and the transaction must be such that the fund holder may safely pay the assignee.

2. SALES—*Restriction upon the Use of Property Sold.*—All kinds of property susceptible of sale and conveyance may be devoted or restricted to such lawful use as the donor or grantor may see fit.

3. SALES—*Construction of Restrictive Conditions.*—In considering the restrictions put upon the use of property, the circumstances under which the contract or conveyance was made, may be considered with a view of ascertaining the significance of the words employed in the agreement and the acts done thereunder; and if it appears that the real object of the grantor in restricting the use which should be made of the property whose possession he parted with, was to secure payment therefor, then, that object attained, the restrictions imposed may be held to have come to an end.

4. SALES—*When the Title Does Not Pass.*—Where the buyer is by the contract bound to do anything as a condition, either precedent or con-

current, on which the passing of the property depends, the property will not pass until the condition is fulfilled, even though the goods may have been actually delivered into the possession of the buyer.

5. SALES—*When the Title Does Not Pass—Illustration.*--A dealer in railroad supplies sold to a manufacturer of locomotives a quantity of wheels to be used in the construction of engines and tenders for a railroad company. The wheels were delivered to the manufacturer and piled up in its yard. Before they were all used the manufacturer became insolvent and made an assignment. The manufacturer having ceased to construct engines for the company, it was held that the dealer was entitled to have the wheels not used delivered back to him by the assignee.

6. ASSIGNMENT FOR THE BENEFIT OF CREDITORS—*What Title Passes by the Assignment.*—Under a voluntary assignment for the benefit of creditors the assignees take merely the title and right of their assignor.

**Memorandum.**—Assignment for the benefit of creditors. Appeal from the County Court of Cook County; the Hon. GEORGE W. BROWN, Judge, presiding. Heard in this court at the October term, 1893. Reversed and remanded with directions. Opinion filed December 21, 1893.

### STATEMENT OF THE CASE.

At the hearing of this case in the County Court it appeared that on February 2, 1893, the petitioner, by H. C. Ayer, its agent, and The Grant Locomotive Works, made a contract evidenced by the following memorandum:

"CHICAGO, February 2, 1893.

Messrs. Page, Newell & Co., 130 Milk St., Boston, Mass.

DEAR SIRS : Enclosed please find order for four hundred and sixty (460) wheels for the Grant Locomotive Works, to be used in the construction of engines and tenders for the C., B. & Q. R. R. Co. They want the 30″ and 33″ wheels first and as soon as possible, and fifty each of the 37″.

You can ship all these wheels as fast as they are made, provided you will take your pay as follows :

The Grant people commence their deliveries to the C., B. & Q. R. R. in May, at the rate of three engines per week, and their deliveries extend from May, each month, into August, and they get their pay from the railroad as they deliver, and will pay you out of the proceeds in the same way. In other words, when the road pays them they will, out of the proceeds, pay you, and on this condition you can ship all the

wheels at once, but hurry forward the 30″ and 33″ wheels as speedily as possible.

I also enclose you " blue prints."

Yours truly,

H. C. Ayer.

This is the understanding between Mr. Ayer and myself.

W. H. Fenner, Jr., Sales Agent.

Pres. Grant Locomotive Works."

The Grant Locomotive Works had secured a contract from the Chicago, Burlington and Quincy Railroad Company to construct and furnish the latter company with fifty-five locomotives, and according to that contract, these engines were to be provided with " Brunswick" wheels; twenty-five of these engines required four wheels each and thirty engines required twelve wheels each, under the contract aforesaid; or a total of 460 wheels in all.

Subsequent to this the appellant delivered the 460 wheels to the Grant Locomotive Works at one time, and the same were placed upon its premises.

Some time after the delivery of the wheels, Mr. Ayer came to the president of the Grant Locomotive Works, and wanted a settlement for the full 460 wheels. He brought an account with him, showing the amount due. Mr. Ayer at this time presented a statement for the entire amount due and wanted a settlement for the 460 wheels.

The president of the Grant Locomotive Works told him that he did not intend to give him the money; and then Ayer wanted to know if he could get some paper that he could negotiate. When the president told Ayer that he could not pay him any money, then Ayer said he wanted paper.

In the yard of the insolvent company the wheels were kept separate by themselves, though no instructions were given to that effect; they were laid in a pile by themselves, because they were a different kind of wheel from any other that the locomotive works had.

The value of the 460 wheels was $24,980.

The Grant Locomotive Works having, afterward, become insolvent, its assignees were by the order of the County

Court, with the acquiescence of the C., B. & Q. Ry. Co., permitted to abandon the said contract for the manufacture of locomotives to which the said wheels purchased of appellant were to be attached. Prior to its insolvency the Grant Locomotive Works had manufactured three locomotives for the C., B. & Q. Ry. Co., and had attached twelve of these wheels thereto, and had received on account of the same, payment, so that for such twelve wheels there was due from the Grant Locomotive Works to appellant over $600.

Appellant, therefore, asked that the assignees of the Grant Locomotive Works be ordered to pay him the price of the said twelve wheels received by it as aforesaid, and be directed to surrender to him the remaining wheels which are yet in its yard at Chicago.

The County Court refused to grant the petition of appellant and from its order denying the relief sought, he prosecutes this appeal.

### APPELLANT'S BRIEF, ROBERT RAE, ATTORNEY.

In the case at bar, there is no pretense that the property was sold or incumbered, nor were there any judicial liens upon it, by attachments levied on it. The question arises simply between the petitioner and the assignees or receivers, who stand in the shoes of the assignor. Willis v. Henderson, 4 Scam. 13; Jenkins v. Pearce, 98 Ill. 646; Eames v. Mayo, 6 Brad. 334; Rhawn v. Pearce, 110 Ill. 350.

Whether the transaction is one of conditional sale or one of credit, must be determined by the intention of the parties, interpreted by what they said at the time of consummating the transaction, and by the surrounding circumstances. Gould v. Warne, 27 Ill. App. 651; Gilbert v. McGinness, 114 Ill. 30; Fleury v. Tufts, 25 Ill. App. 101; Calahan v. Myers, 89 Ill. 566; Straus v. Minzesheimer, 78 Ill. 492; Hunt et al. v. Eldridge, 5 Ill. App. 529.

In cases of attempted sales, by conditional purchasers, the vendor, if not paid according to the terms of the contract, may bring trover or replevin against the vendee. Such conditional sales are valid between the parties, and the

vendor may retake the property from his vendee, on non-performance of the condition, not only in cases in reference to the non-payment of the money, but where any condition precedent is to be performed as to the purchase of the property itself; then, until the act be done or left undone which is to fix the liability as to the purchaser, the property remains in the vendor. Rourke v. Bullens, 8 Gray (Mass.) 549; Marble v. Moore, 102 Mass. 443; Cushman v. Holyoke, 34 Me. 289; Brandt v. Bowlby, Bar. & Adol. 932; Barrow v. Coles, 3 Campb. 92; Swan v. Sheppard, 1 Mood. & Rob. 223; Angier v. Taunton Paper Co., 1 Gray (Mass.) 621; Colcord v. McDonald, 128 Mass. 470; Brown v. Haynes, 52 Me. 578; Singer Machine Co. v. Treadway, 4 Brad. 57; Latham v. Sumner, 89 Ill. 233.

APPELLEES' BRIEF, GARDNER & McFADON, ATTORNEYS.

Appellees contended that the letter of February 2, 1893, did not constitute an assignment to or give appellant any lien on the moneys which the Grant Locomotive Works were to receive from the Chicago, Burlington and Quincy Railroad Company, under the contract to furnish locomotives between the latter company and the Grant Locomotive Works. Christmas v. Russell, 14 Wall. 69; Christmas v. Griswold, 8 Ohio St. 558; Rogers v. Hosack, 18 Wend. 319; Ford v. Garner, 15 Ind. 295; Pearce v. Roberts, 27 Mo. 179; Hoyt v. Stone, 3 Barb. 262; Tremont Nail Co. 16 Nat. Bky. Reg. 448.

The sale by appellant of the 460 wheels, in question, to the Grant Locomotive works, was a sale on credit. Anstedt v. Sutter, 30 Ill. 164.

And it was not a conditional one at all. Benj. on Sales, Secs. 318, 319, 320, and note *d* to last section.

OPINION OF THE COURT, WATERMAN, J.

We do not regard the order of February 2, 1893, and the acceptance thereof, as constituting an equitable assignment of the money which was to be received by the Grant Locomotive Works from the C., B. & Q. R. R. Co. The agree-

ment thus made gave appellant no control over such money; the manifest intention of the parties was that the Grant Locomotive Works should collect from the railroad company, and out of what it received, pay to appellant what was due to him. The Railroad Company could not, with safety, have paid to appellant the amount owing to him by the Grant Locomotive Works, nor would it have had any right, for the security of appellant, to have withheld payment.

An agreement to pay out of a particular fund is not an assignment of such fund or of any portion thereof. To constitute such assignment the assignor must not retain control over the fund, and the transaction must be such that the fund holder may safely pay the assignee. Bromwell v. Turner, 37 Ill. App. 561; Christmas v. Russell, 14 Wall. 84; Hall v. Jackson, 20 Pick. 194; Rogers v. Hosack, 18 Wend. 316; Ford v. Garner, 15 Ind. 301; Pearce v. Roberts, 27 Mo. 179.

In respect to the more than 400 wheels yet on hand, it appears that they were sold by appellant for a particular use, viz., " to be used in the construction of engines and tenders for the C., B. & Q. R. R. Co." Such use being no longer contemplated, can the purchaser apply them to one not contemplated or agreed to when the contract of purchase was made?

In other words, was the agreement of sale an absolute one, without conditions or reservations by the vendor of any right, or is he entitled to insist that if the property is not devoted to the use for which he was informed it was intended, and for which, as he says, he alone consented to part with possession, it shall, not having been in any part paid for be returned to him?

By the terms of sale nothing was due to appellant until the purchaser had delivered these wheels, attached to engines, to the C., B. & Q. Ry. Co., and had received payment from it, and if the plain, literal terms of this agreement are to be carried out, nothing can become due to appellant until something is paid by the C., B. & Q. Ry. Co. to the Grant Locomotive Works for these wheels.

So far as being able to prove a claim against the estate of the Grant Locomotive Works for the price of these wheels, the appellant is, by the literal terms of the contract, in the position that by the agreement of sale the condition upon which alone anything was to become due to him, has never happened; no sum of money for the unused wheels is, therefore, due to him. It is no answer to this statement to say that the assignees of the Grant Locomotive Works are willing that appellant have allowed a claim for the price of these wheels, and be paid his *pro rata* dividend thereon; we are considering, not what may be conceded as a favor, but what is demandable as a right, and whether the Grant Locomotive Works can, at its option, vary the agreement it made.

As appellant could not demand payment until the wheels were attached to engines or tenders and delivered to the C., B. & Q. Ry. Co., it is manifest that he did not, by delivering the wheels at the yard of the Grant Locomotive Works, part with all interest in and title to them. He still retained a certain control over them, a right to have them applied to the only purpose which would enable him to demand payment. Thus it follows that the Grant Locomotive Works did not acquire an absolute title to this property; it was not free to do with it as it saw fit; to break these wheels up and use them as old metal; or to sell them to irresponsible parties; nor could it abandon its contract with the C., B. & Q. Ry. Co., and then hold the wheels for sale to some other party; nor could it change the contract it had with that company and make the time of payment, not as represented in the agreement, as the wheels were delivered, but in two, three or five years after delivery, and thus put off the time at which it was to pay appellant.

In all these respects the transaction between appellant and the Grant Locomotive Works differed from an absolute and unconditional sale in which the title passes upon delivery. The sale actually made was for a particular purpose; compensation was to come to appellant only by carrying out of that purpose, and the Grant Locomotive Works un-

dertook to use reasonable diligence in bringing about the happening of that upon which the compensation of appellant depended; in other words, it took these goods charged with a duty in respect to them, and it held them in trust for the contemplated end, having power in accordance with its agreement with appellant to transfer to the C., B. & Q. Ry. Co. a complete title.

Appellant may have had in view other considerations than merely providing for security, in seeing to it that the transfer by the Grant Locomotive Works was to a great and wealthy corporation, known to pay promptly; he may have thought it valuable to him that wheels of his manufacture should be used on so important a road. It is immaterial what his motives were; the fact remains that he bargained for a specific use, and made his compensation dependent not only upon such use, but upon payment by the C., B. & Q. Ry. Co. to the Grant Locomotive Works. It follows that the Grant Locomotive Works, having failed to fulfill the conditions upon which it was intrusted with this property, it is no longer entitled to hold it, and it should, upon his demand, be returned to the party from whom it was obtained.

We do not, by what is here said, mean to indicate that if the agreed price for these wheels had been paid, the purchaser would not then have acquired an absolute title to and been free to dispose of them as it saw fit. All kinds of property susceptible of sale and conveyance may be devoted or restricted to such lawful use as the donor or grantor may see fit. Hill on Trustees, 41 and 44; Perry on Trusts, Sec. 86, note 1, and Sec. 75.

In considering the restrictions put upon the use of property, the circumstances under which the contract or conveyance was made may be considered with a view to ascertaining the true significance of the words employed in the agreement and the acts done thereunder; and if it appears that the real object of the grantor, in restricting the use which should be made of the property whose possession he parted with, was to secure payment therefor, then, that

object attained, the restrictions imposed may be held to have come to an end.

In the present case, the Grant Locomotive Works in obtaining this property, represented that it had a contract under which these wheels would be disposed of to an important and wealthy railway corporation; that it desired to obtain them for such purpose, and appellant thereupon agreed to wait for his pay until the wheels had been under such contract delivered to and paid for by such railway company.

Appellant would seem to have agreed to the peculiar terms of this sale because he thought that thereby security for payment was afforded to him.

By the terms of the agreement appellant was not to completely part with his title to these wheels until, from time to time attached to an engine or tender, they were delivered to the C., B. & Q. Ry. Co.

One of the rules respecting the passing of title to personal property, upon the sale thereof, is stated in Benjamin on Sales, Sec. 320, as follows:

"Where the buyer is by the contract bound to do anything as a condition, either precedent or concurrent, on which the passing of the property depends, the property will not pass until the condition be fulfilled, even though the goods may have been actually delivered into the possession of the buyer."

In Bandenhall v. Hore, 7 Blatch. 548, it appeared that one of the express conditions of a contract, for the sale of a quantity of wool, was that the defendant should pay for the wool by his own draft on G. P. & B. W. Fay, accepted by the latter, and payable in four months. The plaintiff forwarded the wool to the defendants on the conditions above set forth; the defendants failing to send such draft, the plaintiff replevied the wool.

The court held that the sale was conditional, and that the defendant not having complied with the condition, no title passed, and that the plaintiff was entitled to reclaim the wool.

To the same effect is the case of Whitwell v. Vincent, 4 Pick. 449, the condition upon which the goods were sold and delivered, being, in that case, that the purchaser would give his note, payable in four months, with a satisfactory indorser. Reed v. Upton, 10 Pick. 522; Barrett v. Pitchard, 2 Pick. 512; Ward v. Shaw, 7 Wend. 404; Bunnell v. Marvin, 44 Vt. 277; Fishback v. Van Duzen & Co., 33 Miss. 111; Levin v. Smith, 1 Denio, 571; Fuller v. Bean, 34 N. H. 301; Haggerty v. Palmer, 6 Johns. Ch. 437; Russell v. Minor, 22 Wend. 659, are illustrations of the same principle.

In Ward v. Shaw, *supra*, the vendee was to take certain oxen, purchased, slaughter them, weigh the quarters and pay at the rate of $7.50 per hundred. Possession of the cattle having been delivered to the vendee, they were levied upon as his property, whereupon the vendor brought an action of trover against the sheriff. The action was sustained, and the court said: "Should, therefore, the vendee refuse to slaughter the oxen according to contract, and put them to work on a farm, the vendor may retake them. Should he refuse to pay after weighing the quarters, the owner may take possession of his slaughtered cattle, for the property has not passed, under such a contract, until payment is made or waived."

No question as to the effect of the chattel mortgage law of this State, or of the rights of *bona fide* purchasers from or creditors of the Grant Locomotive Works, arises in this case. The assignees take merely the title and right of their principal.

We do not regard the attempt by Mr. Ayer, the agent of appellant, to obtain payment for these wheels or the note of the Grant Locomotive Works as affecting the obligations of that company, or a surrender by appellant of his control over the unused wheels.

We are of the opinion that the intention of the parties to this contract of sale was not that an absolute title to this property should pass upon its delivery into the yard of the Grant Locomotive Works, but that the sale was one for a certain purpose and use, and that the Grant Locomotive

Works took these wheels charged with the duty to, in a reasonable time, in accordance with its contract with the C., B. & Q. Ry. Co., attach them to engines or tenders, and so deliver them to that railway company, payment being due from the Locomotive Works when, as per its agreement, it received its pay from the Railway Company; and that the Grant Locomotive Works having abandoned its intention to use these wheels as it undertook to do, appellant is entitled to recover them from its assignees.

The order of the County Court disallowing appellant's petition for an order directing the assignees of the Grant Locomotive Works to pay to him the price of the wheels delivered to the C., B. & Q. Ry. Co., for which the locomotive company had received payment, is affirmed, and its order denying the petition of appellant that the wheels, remaining with the assignees of the Grant Locomotive Works, be surrendered to him, is reversed, and the cause is remanded, with directions to the County Court to order the assignees of the Grant Locomotive Works to surrender to appellant, the wheels obtained from him, now in the custody of said assignees.

Reversed and remanded with directions.

Gary, J.

I concur in the result reached by Mr. Justice Waterman, but not in the process by which he arrived at it. The letter from Ayer to the appellant of February 2, 1893, does not purport to be an agreement between the parties, but a narrative of what had been agreed upon, and if incomplete, the real agreement may be shown. 1 Taylor, Ev., Sec. 406; 2 *Ibid.*, Sec. 1134; 1 Greenl. Ev., Sec. 284 a.

If the letter were the only evidence of the agreement, the result would be that the purchaser only failed to perform a promise made in good faith, as to what should be done with the wheels, and how they should be paid for, long after their delivery. This promise is not a condition subsequent, upon failure to perform which the title to the wheels would revest in the seller. 21 Am. & Eng. Ency. of Law, 59.

But the testimony of both Ayer and Fenner is in effect that for convenience and economy to Newell, the Grant Works were willing that all the wheels should be sent at once, stacked on the premises of the Works for Newell, with a license to the Grant Works to take from the piles wheels as might be needed for the Burlington engines.

Under this arrangement the title to no wheels passed to the Grant Works until taken from the pile, and therefore all that remained in it should be delivered to Newell.