# William E. Grayson, Jr., Appellee, v. Chicago League Ball Club, Appellant.

## Gen. No. 24,806.

1.  CORPORATIONS, § 170*—*when assignment of corporate claim not shown.* An assignment of the claim of an Athletic Association against another corporation to plaintiff was not shown, where it appeared that such assignment was claimed by plaintiff to have been effected by reason of a contract between himself as the owner of 487½ shares out of a total of 500, and third parties, to which the association was not a party, and where the evidence failed to show that at the time of making such contract, the association had by act either of its board of directors or of its proper and duly authorized officer, made any sale of its assets, or assigned the claim in question to him.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

2. STATUTES, § 272*—*when foreign law must be pleaded.* In an action brought by the alleged assignee of a corporation, where defendant claimed there was no competent evidence of any assignment to plaintiff, the latter could not claim that the law of a foreign State should govern in determining the question whether or not a certain agreement amounted to an equitable assignment to plaintiff of the claim in question, the claimed law of such foreign State not having been pleaded or proved.

3. ASSIGNMENTS, § 11*—*when agreement cannot be construed as assignment.* Even though the acceptance by a corporation of certain benefits under the agreement in question made by the holder of most of the stock, with third parties, without the consent of the corporation, be conceded as having amounted to a ratification by the corporation, the fact that under the agreement as it stood, moneys could be paid to the corporation upon the claim in suit, of which such stockholder claimed to be the assignee under said agreement, although the claim was not specifically mentioned, precluded the construction of such agreement as an assignment of such claim, either in law or equity.

Appeal from the Municipal Court of Chicago; the Hon. WELLS M. COOK, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1918. Reversed with finding of fact. Opinion filed October 10, 1919.

ALDEN, LATHAM & YOUNG, for appellant; CHARLES MARTIN, of counsel.

MERGENTHEIM, ALTHEIMER & MAYER, for appellee; MORTON A. MERGENTHEIM, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

This is an action of the first class commenced November 8, 1915, in the Municipal Court of Chicago, to recover damages for an alleged breach of a written agreement between the Chicago League Ball Club, defendant, and the Louisville Athletic Association (hereinafter called the Athletic Association), which agreement, it is claimed, had been assigned by the Athletic Association to plaintiff. The jury returned

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

a verdict in favor of plaintiff for $1,500, and on March 30, 1918, judgment against defendant was entered, and this appeal followed.

In plaintiff's statement of claim it is alleged in substance that on August 17, 1911, the Athletic Association and the defendant entered into a written agreement whereby the Athletic Association released to the defendant two baseball players, E. Lennox and L. Cheney, for $3,500 in cash; that it was provided in the agreement that Cheney was to report to defendant immediately and Lennox in the spring of 1912; that it was further provided therein that the defendant was to give to the Athletic Association two players in the spring of 1912, before May 1, 1912; and that on the same day that said written agreement was entered into the Athletic Association entered into a "supplemental" written agreement with defendant, which was in the form of a letter from defendant addressed and delivered in Louisville, Kentucky, to plaintiff, who was then president of the Athletic Association, as follows:

"According to agreement made today, which is to be filed with the National Commission, if Larry Cheney is on the pay roll of the Chicago League Ball Club of the National League after May 1, 1912, I agree to give you two thousand dollars ($2,000) cash, and one player instead of two players, as mentioned in agreement filed with the National Commission.

Yours truly,
Chicago League Ball Club
Charles W. Murphy,
President."

It is further alleged in said statement of claim that the Athletic Association carried out all the terms and provisions of said agreement; that said Cheney was on the pay roll of the defendant after May 1, 1912, and has ever since been; that defendant has wholly failed to carry out any of the terms and provisions of said supplemental agreement and has never paid the

sum of $2,000 to the Athletic Association or any one else; and that the said claim against the defendant in favor of the Athletic Association was duly assigned to plaintiff for a valuable consideration by the Athletic Association, and that plaintiff is entitled to interest thereon from May 1, 1912. In an amendment to plaintiff's statement of claim, it is alleged that on November 15, 1912, the Athletic Association for a valuable consideration assigned to plaintiff a certain claim which said Athletic Association had at that time against the defendant and that plaintiff is the actual bona fide owner thereof.

The defendant, in its affidavit of merits denied that plaintiff was the bona fide owner of said claim and denied that the Athletic Association on November 15, 1912, assigned to plaintiff said claim; admitted the making of the agreement of August 17, 1911, and alleged that it had been fully performed by defendant, and that defendant had paid $3,500 in cash to the Athletic Association and had given to it the two players mentioned prior to May 1, 1912, and denied that there had been any breach of the agreement; and further alleged that the so-called supplemental agreement was an alternative agreement to be operative only in case defendant decided to accept the services of Cheney only, and not the services of Lennox; that defendant as a matter of fact accepted the services of both Cheney and Lennox and carried out the original agreement in full, and that, therefore, the alternative agreement never became of any force or effect; and further alleged that no consideration was ever paid to defendant by the Athletic Association for said alternative agreement; and denied that it was indebted either to the Athletic Association or to plaintiff in any sum.

Counsel for defendant here contend that the trial court should have directed a verdict in favor of defendant because (1) there was no evidence to sustain

plaintiff's contention of a breach of contract, and (2) there was no competent evidence of any assignment to plaintiff of the alleged claim of the Athletic Association against defendant.

We are of the opinion that counsel's second point is well taken. On the trial both the agreement of August 17, 1911, and the so-called supplemental agreement were introduced in evidence. It was admitted that the provisions of the agreement (as distinguished from said supplemental agreement) had been fully complied with by both parties, that the two ball players, Cheney and Lennox, had been delivered to defendant, and that defendant had paid the $3,500 to the Athletic Association and had delivered to it the two other players mentioned. And the evidence further disclosed that prior to November 18, 1912, plaintiff was the owner of 487½ shares of the capital stock of said Athletic Association, which consisted of 500 shares; that one Hanlon was the owner of the other 12½ shares; and that on said date plaintiff entered into a written agreement with William F. Knebelkamp and O. H. Wathen, of Louisville, Kentucky, whereby he sold to them his 487½ shares of said stock. Said agreement was introduced in evidence over objection, and plaintiff contended that by virtue of certain provisions therein the alleged claim here in question against defendant was assigned to him. Those provisions are in substance that Grayson (plaintiff) agrees to protect and hold harmless said Athletic Association from any liability on account of two damage suits then pending against it; that said Athletic Association has no money in bank and no accounts due except from the president of the American Association on account of 1912 business, which amount is not included in the assets of said Athletic Association and is to be refunded to Grayson by Knebelkamp and Wathen or by said Athletic Association when paid; that Knebelkamp and Wathen agree to pay over to Grayson "any money

collected or received on account of business prior to the date of this agreement'' (November 18, 1912) ; and that Grayson is to pay all debts contracted for any purpose, and all salaries of employees, prior to November 9, 1912, and that Knebelkamp and Wathen are to pay all debts contracted and salaries after that date.    The Athletic Association, the corporation, was not a party to said agreement of November 18, 1912, and apparently no one assumed to represent it in the transaction.   The main purpose of the agreement was the transfer of the 487½ shares of the stock of the Athletic Association, owned by Grayson, to Knebelkamp and Wathen. In executing said agreement and in making said transfer Grayson was acting in his individual capacity and was not representing the corporation.   And, at this time, Knebelkamp and Wathen were total strangers to the corporation, as it was solely by virtue of the agreement and the subsequent transfer of Grayson's stock to them that they became stockholders in the corporation and interested in its welfare.    The evidence does not disclose that at this time the Athletic Association, a corporation, by act of the board of directors, or by act of its proper and duly authorized officer, made any sale or transfer of any of its corporate assets, or assigned to the plaintiff, Grayson, the alleged claim in question against defendant.   In *Sellers v. Greer,* 172 Ill. 549-553, it is said:

''A corporation is an artificial being created by law, clothed with certain powers. It acts through its board of directors and officers. Its property is not subject to the control or disposition of its members or stockholders.   They have no power to sell or encumber the corporate property.   *   *   *   In Cook on Stockholders (3rd Ed., sec. 709) it is said: 'The stockholders cannot enter into contracts with third persons. Contracts between the corporation and third persons must be entered into by the directors, and not by the stockholders.   The corporation, in such matters, is represented by the former, and not by the latter.   *   *   *

Although one person owns a majority of the stock, or all of it, or all but two shares, he does not in consequence thereof acquire the right to act for the corporation, or as the corporation, independently of the directors. * * * A single stockholder cannot make a contract for and in the name of the corporation which shall have any binding force or validity, except by subsequent ratification or adoption in the regular manner.' * * * In *Humphreys v. McKissock*, 140 U. S. 304, the validity of the action of all the stockholders 'of a corporation in transferring its property without corporate action arose, and in disposing of the case the court said (p. 312): 'Both the commissioner, and the court in confirming his report and entering the decree mentioned, seem to have confounded the ownership of stock in a corporation with ownership of its property. But nothing is more distinct than the two rights. The ownership of one confers no ownership of the other. The property of a corporation is not subject to the control of individual members, whether acting separately or jointly. They can neither encumber nor transfer that property nor authorize others to do so. The corporation—the artificial being created—holds the property, and alone can mortgage or transfer it; and the corporation acts only through its officers subject to the conditions prescribed by law.' '' (See also *People v. Dennett*, 276 Ill. 43-46.)

It is contended by plaintiff's counsel that the Athletic Association accepted the benefits of said agreement of November 18, 1912, in that plaintiff paid $2,600 in settlement of said two damage suits and also paid a lumber bill against the Athletic Association and that, therefore, the Athletic Association cannot successfully take the position that plaintiff is not entitled to the benefit of the claim against defendant. Even if it be conceded (though not admitted) that the action of the Athletic Association in accepting the benefits of plaintiff's settlement of the two damage suits and the payment of the lumber bill amounted to

a ratification of said agreement by the Athletic Association, we are confronted with the question whether by the terms of the agreement the alleged claim against defendant was assigned to plaintiff. We cannot think it was. It is not specifically mentioned in the agreement. Plaintiff's counsel rely on the provision in the agreement that Knebelkamp and Wathen agree to pay over to Grayson "any money collected or received on account of business prior to the date of this agreement." This suggests that moneys due the Athletic Association on account of business prior to November 18, 1912, were to be "collected and received" by said Athletic Association. And if defendant owed the Athletic Association any moneys on account of a business transaction prior to said date, clearly under the provisions of the agreement it could pay those moneys to the Athletic Association. This being so, we are of the opinion that the said agreement could not be construed as an assignment of the alleged claim against defendant, either in law or equity. In *Christmas v. Russell*, 14 Wall. (U. S.) 69-84, it is said:

"An agreement to pay out of a particular fund, however clear in its terms, is not an equitable assignment; a covenant in the most solemn form has no greater effect. The phraseology employed is not material provided the intent to transfer is manifested. Such an intent and its execution are indispensable. The assignor must not retain any control over the fund—any authority to collect, or any power of revocation. If he do, it is fatal to the claim of the assignee. The transfer must be of such a character that the fundholder can safely pay, and is compellable to do so, though forbidden by the assignor." (See also *Newell v. Grant Locomotive Works*, 50 Ill. App. 611-616; *Bromwell v. Turner*, 37 Ill. App. 561-563.)

And, as it seems to us, the agreement could only be construed as creating the relation of debtor and creditor between the parties thereto. (*Wyman v. Snyder*, 112 Ill. 99-103; *Story v. Hull*, 143 Ill. 506-511.)

It is further contended by plaintiff's counsel that the agreement in question having been made in Kentucky, the law of that State should govern in determining the question whether or not said agreement amounted to an equitable assignment to plaintiff of the alleged claim against defendant by the Athletic Association. It is a sufficient answer to this contention that the claimed law of Kentucky was not pleaded or proved. (*Shannon v. Wolf*, 173 Ill. 253-260; *Hakes v. National State Bank*, 164 Ill. 273-275; *A. D. Juilliard & Co. v. May*, 130 Ill. 87-97.) In the last-mentioned case it is said: "In the absence of any allegation or proof of a statute, we must presume either that the common law obtains in New York, or else that the laws of that State are similar to the laws which prevail in this State, where the action was tried."

For the reasons indicated the judgment of the Municipal Court will be reversed without remanding.

*Reversed with finding of fact.*

Finding of Fact. We find as a fact that the alleged claim in question against the defendant, Chicago League Ball Club, was not assigned to the plaintiff.