# Bell & Howell Company, Appellee, v. George K. Spoor, Appellant.

## Gen. No. 24,619.

1. PATENTS—*nature*. A patent is a right of exclusion which comes into existence solely as the result of a contract with the government.

2. PATENTS—*what is source of right of patentee to make, use and sell patented article*. The right of a patentee to make, use and sell the patented article is not derived from the patent but exists at common law and without special authority from the government.

3. PATENTS—*effect*. The effect of a patent is to secure to the patentee for a specified time the right to exclude all others from making, selling or using the invention.

4. PATENTS, § 10*—*assignment*. A patentee may, by an instrument in writing, transfer the whole patent, comprising the exclusive right to make, vend or use the invention, or an undivided share of such exclusive right, or the exclusive right thereunder for a part of the United States, and a transfer in any of such ways is an assignment and vests in the assignee a title in so much of the patent itself with a right to sue infringers.

5. PATENTS, § 27*—*what constitutes license*. Any right in a patent which is less than an undivided part interest therein is a license and gives no right to bring suit upon the patent.

6. PATENTS, § 27*—*special form of language not necessary to written license*. To constitute a written license by a patentee, no special form of language is necessary.

7. PATENTS, § 27*—*how determined whether agreement is license*. To ascertain whether an agreement with regard to a patent constitutes a license, similar principles of construction to those used in determining the meaning of contracts generally apply.

8. PATENTS, §§ 10, 27*—*what character of contract as assignment or license depends on*. Whether a contract as to a patent constitutes an assignment of the patent or a license depends upon the effect of the whole contract.

9. PATENTS, § 10*—*what does not constitute assignment*. A contract between plaintiff, a patentee, and defendant whereby plaintiff grants to defendant "the exclusive right to use and to have used the said" patented article "as embodied in the aforesaid letters patent and applications," for a specified term, is, in legal effect, no more than a license and does not constitute an assignment.

---

See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

10. PATENTS, § 29*—*when licensee estopped to show that li-censor's patent infringes another patent.* A licensee of the exclusive right to use and have used a patented machine who ordered, received and used a number of them, paying several of the instalments of royalties provided for in the contract, and also wrote the licensor that the only reason further payment was not made was that he had no money, is estopped to show, in an action to recover royalties due under the contract, that such patent infringes another patent.

Appeal from the Superior Court of Cook county; the Hon. JOSEPH H. FITCH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1918. Affirmed. Opinion filed December 10, 1919. Rehearing denied December 22, 1919.

RUDOLPH WM. LOTZ and DAVID JETZINGER, for appellant.

HENRY J. TONER and DAVID K. TONE, for appellee.

MR. JUSTICE TAYLOR delivered the opinion of the court.

The decision in this cause hangs, chiefly, upon the interpretation to be given a certain written contract. The contract in question has already been passed upon —and favorably to the plaintiff's contention—by the United States Circuit Court of Appeals for the Seventh Circuit at the October term, 1919. *Bell & Howell Co. v. Bliss,* 262 Fed. 131.

On May 1, 1915, the plaintiff and the defendant entered into a written contract which recites, (1) that the plaintiff "is in the business of manufacturing machinery used in the manufacture of motion pictures and has designed, perfected and manufactured a mechanism for making positive prints from motion picture negative films, * * * referred to as the step printing machine"; (2), that the plaintiff "is possessed of the exclusive right to manufacture, sell and use the said step printing machine as embodied in United States Letters Patent No. 1,056,794, dated March 25, 1913," and certain other applications for patents

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

covering various details of the machine; and (3) that the defendant "is desirous of securing the exclusive right to use said step printing machine."

That part which creates the principal obligation is as follows:

"The party of the first part (meaning the plaintiff) hereby gives and grants to the party of the second part (meaning the defendant) the exclusive right to use and to have used the said step printing machine as embodied in the aforesaid letters patent and applications." (Then follows a list of letters patent and applications.) "For and during the period of five years next immediately succeeding the execution of this instrument."

"The party of the second part hereby further agrees to pay to the party of the first part for the exclusive right to use the step printing machine as herein granted, the aggregate sum of One Hundred and Forty Thousand ($140,000) Dollars, consisting of a yearly royalty of Twenty-Eight Thousand ($28,000) Dollars, payable in equal quarterly instalments of Seven Thousand ($7,000) Dollars," etc.

It is also, further, provided that the plaintiff shall make and furnish to the defendant as many step printing machines as the latter may require within a reasonable time after they are ordered; that "the defendant shall pay in addition to the royalty for the exclusive use * * * the sum of $400 for each machine" in addition to the cost of manufacture; and that the plaintiff "shall have the right to use and employ any of the inventions hereinbefore enumerated in the manufacture and sale of other machines and of printing machines which do not involve the intermittent or step-by-step movement of the film."

After the contract was made, fourteen machines were furnished by the plaintiff to the defendant and they were both paid for and used by him.

The claim of the plaintiff is for the total amount of three royalty instalments—each being for $7,000—maturing on July 31, 1916, October 31, 1916, and Jan-

uary 31, 1917, respectively. It was admitted by the defendant that those amounts had not been paid. At the trial, the defendant undertook to dispute the plaintiff's title, claiming that the plaintiff's patent infringed that of one Schneider, but the trial judge, being of the opinion that under the law the defendant was estopped by his contract and by use, directed a verdict in favor of the plaintiff in the sum of $22,781.98, and upon that judgment was entered.

The critical question in the case is whether the contract was in its essence an assignment or a license. If it is the former, then, as contended by the defendant in the trial court, he should have been allowed to introduce the evidence which he offered tending to show a failure of consideration; that is, to the effect that the step printing machines made by the plaintiff, and pursuant to his patent and applications, constituted an infringement of the outstanding prior patent rights of Schneider.

The argument of the defendant is that the contract gave to him, substantially, and in every way, all the property rights in the patent and the applications. On the other hand, it is claimed by the plaintiff that the defendant is estopped both by the contract and by user.

A patent is a right of exclusion, and that right comes into being solely as the result of a contract with the government. A patent is "a grant to the patentee, his heirs or assigns, for the term of seventeen years, of the exclusive right to make, use and vend the invention or discovery throughout the United States and states thereof." U. S. Rev. St. sec. 4884. The patent does not create in the patentee the right to make, use and sell the thing patented; that right he possesses at common law and without special authority from the government. *Chicago & A. Ry. Co. v. Pressed Steel Car Co.*, 243 Fed. 883. A patentee's contract with the government secures to him for a specified time the right to exclude all others from making, selling or

using the invention. *National Hollow Brake Beam Co. v. Bakewell,* 224 Mo. 203. ''A patentee or his assigns may, by instrument in writing, assign, grant and convey either, first, the whole patent, comprising the exclusive right to make, use and vend the invention throughout the United States; or, second, an undivided part or share of that exclusive right; or, third, the exclusive right under the patent within and throughout a specified part of the United States. * * * A transfer of either of these three kinds of interests is an assignment, properly speaking, and vests in the assignee a title in so much of the patent itself, with a right to sue infringers; in the second case, jointly with the assignor; in the first and third cases, in the name of the assignee alone.'' *Waterman v. Mackenzie,* 138 U. S. 255.

Any right in a patent which is less than an undivided part interest therein is a license. ''It gives no right to bring suit upon the patent and has been defined as the right not to be sued.'' 30 Cyc. 954; *Heaton-Peninsular Button-Fastener Co. v. Eureka Specialty Co.,* 77 Fed. 288. To constitute a written license no special form of language is necessary, and in interpreting the words used, similar principles of construction are applicable as in determining the meaning of contracts generally. *Hawks v. Swett,* 4 Hun (N. Y.) 146.

An analysis of the contract in question shows the following:  (1)  That the plaintiff was in the business of manufacturing machinery used in making motion pictures.  (2)  That he had perfected and manufactured a mechanism for making positive prints from motion picture negative films characterized by an intermittent or step-by-step action, such mechanism being called in the contract in question, the step printing machine.  (3)  That the plaintiff had the exclusive right to manufacture, sell and use the said step printing machine as embodied in certain United States letters patent and certain applications then pending.  (4)

That the defendant was desirous of securing the exclusive right to use the step printing machine. (5) That the plaintiff gave and granted to the defendant "the exclusive right to use and to have used the said step printing machine as embodied" in said letters patent and applications—which latter are set forth in detail, and comprise one letters patent, upon which a reissue application was pending, and seven pending applications for patents. (6) That the exclusive right to use and to have used was given for the period of 5 years. (7) That the defendant agreed to pay "for the exclusive right to use" the step printing machine, $140,000, consisting of a yearly royalty of $28,000 payable in quarterly instalments of $7,000. (8) That the plaintiff shall make and furnish to the defendant as many step printing machines as he may require within a reasonable time after they are ordered by him. (9) That the defendant shall pay for each machine the cost of its manufacture and in addition, for each, the sum of $400. (10) That the plaintiff during the time "will not make and sell to any third party or parties any step printing machines." (11) That the plaintiff "shall have the right to use and employ any of the inventions hereinbefore enumerated in the manufacture and sale of other machines and of printing machines which do not involve the intermittent or step-by-step movement of the film." (12) That neither plaintiff nor defendant shall have the right to assign his interests without the written consent of the other.

Considerable stress is laid by the defendant upon the words "the exclusive right to use and to have used the said step printing machine as embodied in the aforesaid letters patent and applications." It may well be said that, as the only substantial right which the patentee obtains by reason of his contract with the government is to exclude others from making, selling, or using the invention, that if the patentee has entirely parted with the exclusive right to have the invention

used for a definite period of time and has restricted the right to manufacture the machines to those manufactured by himself under orders from the one to whom the exclusive right to use and have them used is given, he has for the time being parted with the whole of his patent rights and has transferred his monopoly to another. *National Hollow Brake Beam Co. v. Bakewell, supra.* But, we are bound to consider all parts of the contract, for whether it constitutes an assignment or a license depends upon the legal effect of the whole. *Waterman v. Mackenzie,* 138 U. S. 252. If the legal effect of the contract is such that there remain in the plaintiff no rights of practical value, it would seem to be reasonable to hold that the contract was an assignment and not a license.

The theory of the defendant, put in its simplest form, is that, as he is the only one who has the right to have the machine used and also has the exclusive right to order every machine that may be used—the plaintiff being merely his agent to manufacture upon his order—he has practically considered, all the rights of an assignee. In other words, that all the substantial rights obtained from the government are now possessed and owned by him. Unfortunately, for that construction, there is an exception in the contract.

It is provided in the contract that the plaintiff "shall have the right to use and employ any of the inventions hereinbefore enumerated in the manufacture and sale of other machines and of printing machines which do not involve the intermittent or step-by-step movement of the film." That which the defendant was granted by the contract to use and have used was the "step printing machine as embodied in the aforesaid letters patent and applications."

The step printing machine, the exclusive use of which was granted to the defendant, is described in the contract as embodied in certain letters patent, of which a reissue application was pending, and seven

applications for patents. It would seem, therefore, that the parties did not have in mind an assignment of the entire monopoly which arose by reason of the letters patent and the applications owned by the plaintiff.

In *Nellis v. Pennock Mfg. Co.*, 13 Fed. 451, the court said: "On the 28th day of June, 1867, D. B. Rogers & Sons * * * made an agreement with Wheeler, Melick & Company by which they granted to the latter 'the exclusive right under said recited letters patent to manufacture and sell a certain hay elevator, which has a movable point, which also serves as and performs the functions of prongs or barbs to sustain the hay.' This is not an assignment of an exclusive interest in the entire monopoly for the whole or any portion of the United States. It is a license only to manufacture and sell exclusively a specified form of hay elevator covered by the Walker patent. The beneficial ownership of it as to all other forms of hay forks and the legal title to it remain in D. B. Rogers & Sons." In the instant case, what portion of the matters patented and to be patented was used in the step printing machine, the evidence does not show. That which the contract excepts from the grant and reserves to the plaintiff—"the right to use and employ * * * in the manufacture and sale of other machines"—may be of substantial value and importance to the plaintiff; and in the face of that exception and reservation, may it be reasonably said that the contract constitutes an assignment of an exclusive interest in the entire monopoly to the defendant? We do not think so.

We are bound to assume that that right, which the parties have taken pains expressly to reserve to the plaintiff, has some value, and is possessed of both quality and quantity, and, such being the case, it necessarily follows that the plaintiff did not part with the whole of his patent rights, that is, his entire rights of exclusion. The contract did not convey to the defendant, to use the language of Mr. Justice Taney in *Gay-*

*ler v. Wilder,* 10 How. (U. S.) 477, "the entire and unqualified monopoly which the patentee held." After the contract in question was consummated, the right of exclusion, as far as the use of the patent in the manufacture and sale of machines and printing machines which did not involve the intermittent or step-by-step movement of the films, still remained in the plaintiff, and shows that he had not parted with his entire and unqualified monopoly.

The instrument is inartistically drawn, but after careful analysis and giving due weight to all its parts, we are impelled to the conclusion that in its legal effect it is no more than a license and is not an assignment.

The defendant ordered, received and used fourteen step printing machines. He paid four instalments of royalties amounting in all to $28,000. On March 9, 1917, he wrote to the plaintiff, "the only reason we have paid you no money is because we haven't any at this time," etc. We are of the opinion that the defendant, by reason of the contract and his acts *in pais,* was estopped from showing an infringement of the Schneider patent, and that the trial court did not err in refusing to admit evidence on that subject.

Finding no error in the record the judgment is affirmed.

*Affirmed.*