**Bell & Howell Company, Appellant, v. George K. Spoor, Appellee.**

**Gen. No. 26,482.**

1. ASSIGNMENTS—*right of assignor corporation to sue for royalties under contract notwithstanding such assignment.* A corporation retains the right to sue for royalties due under a license contract to use a patent, even though there is a provision in the original contract against assignment of interests without the defendant's consent, where, in the subsequent assignment contract, the parties expressly contract that their acts shall not constitute an assignment, where the corporation retains the "right to collect" royalties and has certain duties to perform as to payment of amounts recovered, and where profits on machines ordered are to continue the property of the corporation, there being a distinction

as to an assignment of the contract and an assignment of money due on the contract.

2. ASSIGNMENTS—*validity and effect of transfer of right to royalties where license to use patent not assignable.* Under a contract licensing the use of a patent and providing that a corporation should not have the right to assign or transfer its interest in the contract without the consent of the licensee, a subsequent contract purporting to transfer the corporation's interest in the royalties to individuals, who also transfer their stock to the corporation, is not a violation of the original contract so as to prevent a suit by the corporation to recover the royalties, because the right to the moneys due is distinct from the contract itself, and the licensee was not entitled to claim that the stockholders should remain the same.

3. PATENTS—*right of licensor of nonassignable rights to collect royalties as affected by giving void assignment.* If a corporation, which licenses the use of a patent and contracts not to assign or transfer its interest in the contract without the consent of the licensee, enters into an assignment with individuals which is void, it would not prevent the corporation from maintaining a suit for royalties.

4. PATENTS—*effect of breach of contract not to assign interest under license contract.* If an assignment constitutes a breach of a contract whereby a corporation licensing the use of a patent had agreed not to assign its interest without the consent of the licensee, such breach would not prevent an action by the corporation to recover royalties due under the license contract, but would give the licensee a right to recoup for damages, and in the case of a failure to prove such damages the defense would be of no avail.

5. ASSIGNMENTS—*proper parties to sue on non-negotiable chose in action.* Under a contract of a corporation licensing the use of a patent for a certain royalty, and containing a provision against assignment of the interest without the consent of the licensee, the corporation, prior to the amendment of the Practice Act in 1907, was the proper party to sue for the royalties due, as the contract was a non-negotiable chose in action; and after such amendment (Cahill's Ill. St. ch. 110, ¶ 18) the alleged assignor retained the same right.

6. JUDGMENT—*when matter is res adjudicata.* In a suit for royalties due under a contract licensing the use of a patent, the defendant was not entitled to offer evidence as to failure of consideration, or on the ground of interference, when the pleadings in another suit between the same parties presented the questions of validity of the contract, its consideration and the issue of interference, and in the same way the defendant, having failed to controvert allegations of the pleadings in the former case, was not

entitled to claim rescission of the contract involved between the parties, it being the rule that when a cause is litigated, all questions that were open to consideration and could have been presented, relating to the same subject-matter, are *res adjudicata.*

Appeal from the Municipal Court of Chicago; the Hon. JOHN A. SWANSON, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1920. Reversed and judgment here. Opinion filed May 17, 1922. Rehearing denied June 1, 1922. *Certiorari* denied by Supreme Court (making opinion final).

DAVID K. TONE, for appellant.

CHARLES S. DENEEN and DAVID JETZINGER, for appellee.

MR. JUSTICE TAYLOR delivered the opinion of the court.

On September 25, 1918, the plaintiff Bell & Howell Company, an Illinois corporation, brought suit against the defendant, George K. Spoor, for a certain royalty instalment which, it was alleged, came due on July 31, 1918. After a trial of the issues, without a jury, the trial judge entered judgment that the plaintiff take nothing by its suit.

The substance of the matters involved herein was before this court, and considered by it, once before, and is set forth in *Bell & Howell Co. v. Spoor,* 216 Ill. App. 221. We therein set forth an analysis of the basic contract, whereby the plaintiff gave to the defendant certain patent rights for which the defendant agreed to pay the plaintiff the sum of $140,000 in the form of a yearly royalty of $28,000, for 5 years, payable in quarterly instalments of $7,000. In that case there was a judgment in favor of the plaintiff in the sum of $22,781.98 for royalty instalments of $7,000 each, which had matured on July 31 and October 31, 1916, and January 31, 1917, respectively. In the instant case the suit is for the instalment of royalty which it

is claimed became due upon July 31, 1918, in the sum of $7,000.

It is contended by the defendant (1) that on October 15, 1917, the plaintiff assigned its contract of May 1, 1915, to Donald J. Bell and Albert S. Howell, and that by a later contract, dated December 2, 1918, Albert S. Howell 'assigned all of his right, title and interest in and to the contract of October 15, 1917, to Donald J. Bell and that, by reason of those assignments, the legal interest in the contract of May 1, 1917, became vested in Donald J. Bell, and the Bell & Howell Company cannot now maintain this suit;

(2) That as the contract of May 1, 1915, provided that neither of the parties should have the right to assign his interest without the written consent of the other, the contract of October 15, 1917, was such a breach as to prevent the plaintiff recovering in this suit, and

(3) That on October 11, 1917, the defendant rescinded the contract of May 1, 1915, and that further, after such rescission, he was not bound to return the fourteen machines which he claimed he had bought and paid for under a prior oral contract.

(1) In determining whether Bell & Howell Company has the right to prosecute this suit, it becomes necessary to consider, first, the royalty contract of May 1, 1915, second, the alleged assignment of October 15, 1917, and, third, the assignment of December 2, 1918. As to the royalty contract of May 1, 1915, in the former case we used the following language:

"An analysis of the contract in question shows the following: (1) That the plaintiff was in the business of manufacturing machinery used in making motion pictures. (2) That he had perfected and manufactured a mechanism for making positive prints from motion picture negative films characterized by an intermittent or step-by-step action, such mechanism being called in the contract in question, the step printing machine. (3) That the plaintiff had the

exclusive right to manufacture, sell and use the said step printing machine as embodied in certain United States letters patent and certain applications then pending. (4) That the defendant was desirous of securing the exclusive right to use the step printing machine. (5) That the plaintiff gave and granted to the defendant the 'exclusive right to use and to have used the said step printing machine as embodied' in said letters patent and applications—which latter are set forth in detail, and comprise one letters patent, upon which a reissue application was pending, and seven pending applications for patents. (6) That the exclusive right to use and to have used was given for the period of 5 years. (7) That the defendant agreed to pay 'for the exclusive right to use' the step printing machine, $140,000, consisting of a yearly royalty of $28,000 payable in quarterly instalments of $7,000. (8) That the plaintiff shall make and furnish to the defendant as many step printing machines as he may require within a reasonable time after they are ordered by him. (9) That the defendant shall pay for each machine the cost of its manufacture and in addition, for each, the sum of $400. (10) That the plaintiff during the time 'will not make and sell to any third party or parties any step printing machines.' (11) That the plaintiff 'shall have the right to use and employ any of the inventions hereinbefore enumerated in the manufacture and sale of other machines and of printing machines which do not involve the intermittent or step-by-step movement of the film.' (12) That neither plaintiff nor defendant shall have the right to assign his interests without the written consent of the other.''

It will be seen we there held that the contract was a license to the defendant for which the latter agreed to pay $140,000 in quarterly instalments of $7,000, and, further, contracted that neither of the parties, Bell & Howell or Spoor, should have the right to assign its or his interest without the written consent of the other.

An analysis of the so-called "indenture" or alleged assignment of October 15, 1917, shows the following: (1) That Donald J. Bell and Albert S. Howell, owning respectively seven-tenths and three-tenths of the capital stock, transferred their stock for a consideration to the Bell & Howell Company; (2) that it was not their intention to transfer to that company their equitable interests in the royalty contract; (3) that "it is the understanding of all the parties hereto, that there is no intention on the part of The Bell and Howell Company to assign said contract in violation of the terms of said contract, or to in any way impair the obligation of said contract, yet, it is the definite understanding of each    *    *    *    that the right to receive the proceeds of the collections under said royalty contract, remains in Donald J. Bell and Albert S. Howell," Bell to be entitled to receive seven-tenths, from the company, Howell to receive three-tenths, of the total amount recovered, after paying an amount equal to 10 per cent of the total to Howell and paying certain court costs and attorney's fees; (4) "that the right to collect under said royalty contract is not to be treated as *    *    *    any part of the assets of The Bell and Howell Company, but on the contrary, all right to receive the proceeds collected under said royalty contract shall be considered to be and treated as the separate property of the said" Howell and Bell; (5) that if Spoor orders other machines and pays for them, the profits thereof shall continue to be the property of the company; (6) that a trust fund of $6,666.67 (Howell paying in, $2,000 and Bell the balance) shall be put into the hands of the company to be used by the company for attorney's fees, court costs and obligations of the company, owing to certain litigation, for the payment of all expense incident to the litigation of the Spoor contract, and, also, to pay the balance due certain patent attorneys; that the trust fund shall be held by the company apart from its regular assets and kept as an express

trust fund for the benefit of Bell and Howell; (7) that
a certain contract of employment of one Toner, a law-
yer, to prosecute suits for royalties against Spoor, and
to receive a certain amount as fees was ratified; and
(8) that a certain agreement as to the *Bliss* case in the
District Court between the company and Toner and
ten lawyers should be carried out and the latter paid
for their legal services out of the above-mentioned
trust fund.

The third instrument, the assignment of December
2, 1918, is an assignment by Howell of all his right,
title and interest in the contract of October 15, 1917, to
Bell.

It will be seen, from the foregoing analysis, that the
parties expressly disclaimed any assignment in viola-
tion of the contract of May 1, 1915, and that they un-
dertook to leave undisturbed the right of the company
to collect the royalties. The legal right of the com-
pany to collect is nowhere abridged. It is true that
royalties when collected were ''not to be treated as,
or considered as any part of the assets'' of the com-
pany, but the right to demand, to obtain, to collect, and
therefore, the right to sue for royalties remained le-
gally in the company. And, when royalties are col-
lected by the company, it is provided that ''the right to
receive the proceeds of the collections under said roy-
alty contract remains'' in Bell and Howell and that
they ''shall be entitled'' to receive from ''the com-
pany'' of the total amount recovered, each a certain
proportion. If the contract went no further, it might
reasonably be said that it took from the company all
pecuniary or substantial interest in the royalty con-
tract, and left it, the company, with the mere naked
right to sue and collect and then pay over; but it fur-
ther provides that: ''In the event that other step
printing machines are ordered by George K. Spoor
and paid for by him, all profits accruing through the
manufacture of such machines shall continue to be the

property of the Bell and Howell Company." And al-
though the ownership of the legal right to collect is
sufficient, there was even more, for we cannot assume
that the provision just stated was entirely without
value.

Further, it is quite obvious, that the company, in the
eyes of the law, retained control over the proceeds of
the royalty contract, and, under the circumstances,
Spoor would have paid Bell and Howell, individually,
at his peril. In the first place his obligation was di-
rectly to the company, and, in the second place, he
could not determine from the alleged assignment what
amount was due either Bell or Howell. *Story v. Hull,*
143 Ill. 506. Howell was entitled to "an amount equal
to ten per cent (10%) of the net amount recovered, af-
ter the payment of all court costs and attorney's fees
under said royalty contract, as per a certain agree-
ment now in existence," etc. It would certainly be a
hardship on Spoor, in case he had paid the company
and was then sued by Bell or Howell, to hold that he
was bound to find out, at his peril, all about their con-
tractual relations with the Bell & Howell Company.
Would not any court hold under the circumstances,
having paid the company, he was absolved? Naturally
there is no case in the books on all fours with this, al-
though there are cases somewhat, in principle, similar.
In *Newell v. Grant Locomotive Works,* 50 Ill. App.
611, where there was an agreement between the Loco-
motive Works and Newell by which the former pur-
chased from Newell certain wheels and promised to
pay Newell when it received payment from a certain
railroad, the court held that the agreement did not con-
stitute an assignment to Newell of the amount due
from the railroad. The court there said:

"The railroad company could not, with safety, have
paid to appellant the amount owing to him by the
Grant Locomotive Works, nor would it have had any
right, for the security of appellant, to have withheld

payment. An agreement to pay out of a particular fund is not an assignment of such fund, or of any portion thereof. To constitute such an assignment, the assignor must not retain control over the fund, and the transaction must be such that the fundholder may safely pay the assignee. *Bromwell v. Turner,* 37 Ill. App. 561; *Christmas v. Russell's Ex'rs,* 14 Wall. [U. S.] 84; *Hall v. Jackson,* 20 Pick. [Mass.] 194; *Rogers v. Hosack's Ex'rs,* 18 Wend. [N. Y.] 319; *Ford v. Garner,* 15 Ind. 301; *Pearce v. Roberts,* 27 Mo. 179."

In the instant case, Bell and Howell, individually, had the right to receive the proceeds of the collections, but were "entitled to, and to receive" from the company each a certain part "of the total amount recovered" by the company, and as said by the court in *Hibernian Banking Ass'n v. Davis,* 295 Ill. 537: "Counsel, however, lose sight of the difference between an actual assignment or appropriation of the fund and a mere promise or agreement to pay out of a certain fund when it shall be collected or recovered. It is only where there is an actual appropriation of the fund that an equitable assignment arises. It does not arise from a promise to pay out of a certain fund when such shall be created. *Story v. Hull,* 143 Ill. 506; *Cameron v. Boeger,* 200 Ill. 84."

In *Cameron v. Boeger,* 200 Ill. 84, the court said: "Under the authorities, there is a clear distinction 'between an actual assignment of a part of a debt, or claim, or fund, and a mere promise or agreement to pay a part of such debt or claim when collected, or recovered, or pay out of such fund.' *Story v. Hull,* 143 Ill. 506. Here, the agreement, that the compensation of appellants should come out of the amount realized as the result of the litigation, was simply a promise by the association and its president that they would pay such compensation out of the proceeds of the litigation, and depended for its performance upon the mere personal responsibility of the promisors."

We are of the opinion that not only the letter but the spirit of the instruments of October 15, 1917, and

December 2, 1918, is such that the right to maintain this suit still remained in the Bell & Howell Company, the plaintiff. In *Dix v. Mercantile Ins. Co.*, 22 Ill. 272, cited by counsel for the defendant, which was an action on an insurance policy, where the declaration showed that after the policy was issued but before the loss, the plaintiffs had parted with the property insured, and assigned the policy, the court held that, as the policy provided "in case of any transfer or change of title in the property insured  *  *  *  such insurance shall be void and cease," the plaintiffs by the showing of the declaration "had no insurable interest at the time of the loss." That case is not in point because the parties had expressly contracted that the thing done by the insured, that is the change of title in the property, should avoid the policy, and what is more, the former insured had no possible interest left that might be insured, and, so, could suffer no loss. In that case the court properly said: "A party suing who, by his own showing, by the averments in his declaration, has no interest whatever in the cause of action, never can be permitted to recover in an action at law." In the instant case the parties not only expressly contracted that their acts should not constitute an assignment, but they provided that the company should retain the "right to collect" and then should have certain duties to perform as to the payment "of the total amount recovered"; and further provided that if other machines were ordered the profits on them should "continue to be the property of the Bell and Howell Company."

Nor is *Larned v. Carpenter*, 65 Ill. 543, in point. In that case the promise of the defendant to pay was directly made, and originally, to one Estey, and yet he brought suit in the name of Carpenter. There never being any obligation, implied or express, from Larned to Carpenter, the latter had no cause of action.

As to the provisions in the contract of May 1, 1915,

against assignment: The clause in that contract is as follows:

"It is hereby further mutually understood and agreed by and between the parties hereto that this agreement shall be binding upon the successors, legal representatives and assigns of the party of the first part and upon the heirs, legal representatives and assigns of the party of the second part but that neither party hereto shall have the right to assign or transfer its or his interest hereunder and discharge its or his duties and obligations herein prescribed without the written consent of the other party hereto to any such assignment or transfer."

The language is somewhat inartistic and involved. It is "that neither party hereto shall have the right to assign or transfer its or his interest hereunder," and then follows the words, "and discharge its or his duties and obligations herein prescribed without the written consent of the other party hereto to any such assignment or transfer." It is reasonable, however, to conclude that it is a provision that the Bell & Howell Company should not "have the right to assign or transfer its" interest in the contract, without the written consent of Spoor. That being the case, did the instrument of October 15, 1917, constitute a violation of that provision? We have already stated that that instrument did not take away from the company the right to sue, to bring this suit, and we did so on the theory that that right it had never parted with. Does it not follow, therefore, that the instrument of October 15, 1917, although it does purport to transfer the Bell & Howell Company's interest in the balance of the $140,000 of royalties to Bell and Howell, individually, is not such a violation of the clause against assignment as would prevent this suit, unless it were shown to have substantially injured Spoor's rights under the original contract? We have already described what kind of an assignment it was. It covered nothing outside of certain royalties, and these, only after they

were collected, and as said in *National Surety Co. v. Maag,* 43 Ind. App. 16: "An assignment of moneys due or to become due is not an assignment of the contract." In *Fortunato v. Patten,* 147 N. Y. 277, where one who had a contract with the City of New York purported to assign the money due and to become due thereunder, the court said: "There is a wide difference between assigning moneys due under a contract and an absolute assignment of the contract itself, as the latter act disturbs that relation of personal confidence which exists between one desiring work done that requires a high order of skill and intelligence, and the contractor he may have selected as possessing these necessary qualifications."

In *Barrett v. Regan,* 177 Ill. App. 311, the court held that although a certain contract was not assignable, still, money due thereunder, in so far as the contract had been performed, was assignable and could be sued for.

In *Burck v. Taylor,* 152 U. S. 634, cited by counsel for the defendant, there was an assignment of a one thirty-second part of a contract for building a State House for the State of Texas. It is not in point, as we have already held that the alleged assignment herein was only a promise to collect and then pay over certain royalties, and did not purport to assign the obligations of the Bell & Howell Company. It is argued by counsel for Spoor that the relationship between the latter and the company was such that the alleged assignment was a vital breach of the contract. That does not seem to be tenable. It is true that Bell and Howell both transferred their stock to the company, but that, there is no question, they had a right to do. The contract of May 1, 1915, was made by the company and not by Bell and Howell individually, and it still remained liable thereunder, in full, just as before, to Spoor. He might have preferred that Bell and Howell, individually, should have remained stock-

holders, as before, but he had no legal or equitable right to insist that they should. He made his contract with the company, and that still stands, with all its obligations to him. One making a contract with a corporation is not entitled to claim that during the running of the contract the roster of stockholders shall not change. We cannot conclude, therefore, that the right to the royalties were so coupled with the obligations to be performed by the company that the alleged assignment either constituted a breach, or now prevents the company from maintaining this suit.

It is also urged by counsel for the defendant that the Bell & Howell Company by making the alleged assignment "breached a fundamental and important provision of the contract and the Bell & Howell Company is in default and cannot maintain this action." That argument, however, is untenable for two reasons: First, we have already held that the alleged assignment did not necessarily constitute a breach, and second, even if it did, it would not take away the right of the company to sue. Of course, if we assume that the alleged assignment was void, it would not prevent the company from maintaining this suit. *Kitterlin v. Milwaukee Mech. Mut. Ins. Co.*, 134 Ill. 647; *Peck v. Heurich*, 167 U. S. 624; *Selby v. Hutchinson*, 9 Ill. (4 Gilm.) 319. If, on the other hand, making the alleged assignment constituted a breach, it would not bar this action by the company, but, at most, would merely give the defendant the right to recoup for damages; and as no damages have been shown, such a defense now is unavailing. *Charter Gas Engine Co. v. Charter*, 47 Ill. App. 36; *Weintz v. Hafner*, 78 Ill. 27; *Anaconda Copper Min. Co. v. Houston*, 107 Ill. App. 183; *Anglo-Wyoming Oil Fields v. Miller*, 117 Ill. App. 552; *Mill Dam Foundery v. Hovey*, 38 Mass. 417. Further, as to the right of the plaintiff to sue, prior to the amendment of the Practice Act in 1907, the plaintiff alone could have sued as the contract was a non-negotiable

chose in action; and since the amendment (Cahill's Ill. St. ch. 110, ¶ 18; Jones & Addington Ann. St., sec. 8555), the alleged assignor retained the same right.

As to rescission and *res adjudicata:* It is claimed by the defendant that on October 11, 1917, he rescinded the contract of May 1, 1915. That contention is untenable. The validity of the contract was established in the former suit, *Bell & Howell Co. v. Spoor,* 216 Ill. App. 221, and there was shown neither rescission nor ground for rescission.

In the declaration in that case the plaintiff claimed three instalments of royalty. Spoor filed a claim of set-off, and set up that "the plaintiff was not possessed of the exclusive right" and did not grant him the exclusive right, by reason of which the consideration for the contract failed. He, also, pleaded that the plaintiff was not the owner of and did not then have the exclusive right to use the step printing machine, and did not furnish him the exclusive right of user, and as a result there was a failure of consideration. The plaintiff filed two replications. In one it sets up that by the contract of May 1, 1915, it gave and granted to the defendant the exclusive right of user, and further, that the defendant ordered certain machines under the contract and has ever since been using them, and that defendant is, therefore, estopped from claiming the contract is not valid. In the other replication the plaintiff avers that it had and gave the exclusive right of user to the defendant and that he had enjoyed that right as stipulated for in the contract of May 1, 1915. It further sets up the letters patent and applications which it claims created in it the rights, the user of which it gave to the defendant. To the first replication the defendant filed a plea alleging that he did not enjoy the user without interference but that a suit brought by one Bliss was pending against him for interference; and that the plaintiff did not have the right

to grant him the exclusive use. As to the second replication, the defendant joined issue.

The defendant then filed an additional plea in which he sets up that the exclusive right of user was the sole consideration; that the patent of the plaintiff infringed patent numbered 1,031,820, issued to one Schneider, that he, the defendant, therefore, did not acquire the exclusive right to use the patented machine and, so, the consideration for the contract failed. To the latter plea the plaintiff replied that at the time of the contract of May 1, 1915, the Schneider patent did not cover any portion of the machine in question; that the machine of the plaintiff did not infringe the Schneider patent, and submitted the matter to the jury. Upon the pleadings, as recited, and the evidence, there was in that case an instructed verdict and judgment, in favor of the plaintiff, in the sum of $22,781.98, which was subsequently, on appeal, affirmed by this court.

From the foregoing, it will be seen that the validity of the contract, its consideration, the issue of interference and whether the contract of May 1, 1915, licensed the user of machines, were definitely precipitated by the pleadings and must, therefore, be considered as having been already adjudicated, and, under the circumstances, the defendant would not in the instant case, or in any other suit thereafter, be entitled to offer evidence either as to a failure of consideration of the transfer of the right to use, or on the subject of interference or on the ground of the Schneider patent. *People v. Locklin,* 273 Ill. 106; *Central Investment Co. v. Melick,* 267 Ill. 564; *Marshall v. John Grosse Clothing Co.,* 184 Ill. 421; *Louisville, N. A. & C. Ry. Co. v. Carson,* 169 Ill. 247.

Further, having failed in the former case to controvert the allegations of the plaintiff that he, the defendant, ordered the machines under the contract of May 1, 1915, and had been using them ever since, it would not now be reasonable to allow him to relitigate that mat-

ter which was involved in that suit and claim in the instant case that he is entitled to undertake to prove rescission based on the theory that he did not get those machines or their user under the contract of May 1, 1915, but got them under a prior oral undertaking. In *Lusk v. City of Chicago,* 211 Ill. 183, the court said: "It is a well-settled rule that when a cause is litigated and that litigation prosecuted to a court of appeals and passed upon, all questions that were open to consideration and could have been presented, relating to the same subject-matter, are *res judicata,* whether they were presented or not."

The judgment of the municipal court is, therefore, reversed and judgment entered here in favor of Bell & Howell Company against Spoor in the sum of $7,000 for the instalment of royalty that became due on July 31, 1918, together with interest thereon at the rate of 5 per cent per annum to date, making in all $8,558.19.

*Reversed and judgment here.*

O'CONNOR, P. J., and THOMSON, J., concur.